Brian Brazier, Esq. (SBN: 245004)
**PRICE LAW GROUP, APC**
8245 North 85th Way
Scottsdale, AZ 85258
T: (818) 600-5587
F: (818) 600-5464
E: brian@pricelawgroup.com

Lauren Tegan Rodkey, Esq. (SBN: 275830)
**PRICE LAW GROUP, APC**
6345 Balboa Blvd, Suite 247
Encino, CA 91316
T: (818) 600-5526
F: (818) 600-5426
E: tegan@pricelawgroup.com

Attorneys for Plaintiff,
*Henry Mendoza*

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
## SOUTHERN DIVISION

| | |
|---|---|
| HENRY MENDOZA,<br><br>　　　　Plaintiff,<br><br>　vs.<br><br><br>ALLIED INTERSTATE, LLC<br><br>　　　Defendant. | **Case No. 8:17-CV-00885-JVS-KES**<br><br>**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PARTIAL SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Complaint Filed: May 19, 2017<br>Trial Date: December 10, 2019<br><br>Date: October 21, 2019<br>Time: 1:30 p.m.<br>Place: Courtroom 10C<br><br>Hon. Judge James V. Selna<br>Hon. Magistrate Judge Karen E. Scott |

TO ALL PARTIES AND ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that pursuant to Fed. R. Civ. P. 56 Plaintiff, Henry Mendoza ("Plaintiff") submits his Motion for Partial Summary Judgment against Defendant, Allied Interstate, LLC ("Allied"). The hearing is set for October 21, 2019, at 1:30 p.m. at before the Honorable James V. Selna in Courtroom 10C of the United States District Court, Central District of California, located at 411 W. 4th St., Santa Ana, CA 92701

Plaintiff's Motion will be based on this Notice of Motion, the attached Memorandum of Points and Authorities, the Statement of Uncontroverted Facts and Conclusions of Law, Declarations, Exhibits, pleadings and papers filed herein, and such further argument and evidence as may be presented at the haring of the motion. This motion is made following the conference of counsel pursuant to L.R. 7-3 which took place on September 6, 2019.

By:*/s/ Brian Brazier*
    Brian Brazier, Esq.

By: */s/ Lauren Tegan Rodkey*
Lauren Tegan Rodkey, Esq.

Attorneys for Plaintiff
Henry Mendoza

# TABLE OF AUTHORITIES

**Cases**

.”);  *Gutierrez v. Barclays Grp.*, Case No. 10CV1012 DMS BGS, 2011 WL

579238, at *4 (S.D.Cal. Feb. 9, 2011) ............................................................ - 17 -

*ACA Int'l v. FCC,* 855 F.3d 687 (D.C. Cir. 2018) ............................................ - 12 -

*ACA Int'l v. FCC,* No. 15-1211, 2018 U.S. App. LEXIS 6535, at * 8 (D.C. Cir.

Mar. 16, 2018) ................................................................................................. - 13 -

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) .............................. - 11 -

*Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) ......................................... - 10 -

*Gager v. Dell Financial Services, LLC*, 727 F.3d 265 (3d. Cir. 2013) .............. - 16 -

*Glob. Communs., Inc. v. Blue Jay, Inc.*, No. C-08-4254 PJH (EMC), 2009 U.S.

Dist. LEXIS 111609, at *21 (N.D. Cal. Aug. 4, 2009) .................................... - 20 -

*Herrera v. First Nat'l Bank of Omaha, N.A.,* No. 2:17-cv-01136-RSWL-SKA,

2017 WL 6001718, at *3 (C.D. Cal. Dec. 4, 2017) .......................................... - 17 -

*Jara v. GC Servs. Ltd. P'ship,* No. 2:17-cv-04598-ODW-RAO, 2018 WL 2276635,

at *3 (C.D. Cal. May 17, 2018) ......................................................................... - 17 -

*Marks v. Crunch San Diego, LLC,* 904 F.3d, 1041, 1049 (9ᵗʰ Cir. 2018) .......... - 12 -

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) . - 11 -

*Meyer v. Portfolio Recovery Assocs., LLC*,

707 F.3d 1036, 1043 (9th Cir. 2012) ................................................................ - 14 -

*Meyer v. Portfolio Recovery Assocs., LLC*, 707 F.3d 1036 (9th Cir. 2012) ....... - 14 -

*Morse v. Allied Interstate, LLC*, 65 F. Supp. 3d 407 (M.D.Pa. Dec. 10, 2014) . - 14 -

*Nelson v. Santander Consumer USA, Inc*.,

931 F. Supp. 2d 919, 928-930 (W.D. Wis. 2013) ............................................ - 14 -

*Olney v. Progressive Cas. Ins. Co.*, 993 F. Supp. 2d 1220, 2014 WL 294498, *7 (S.D. Cal. Jan. 24, 2014) ................................................................................ - 21 -

*Reardon v. Uber Technologies, Inc.*, 115 F.Supp.3d 1090, 1102 (N.D. Cal., 2015) - 16 -

*Robinson v. Midland Funding, LLC,* 2011 U.S. Dist. LEXIS 40107 (S.D. Cal. Apr. 13, 2011) ............................................................................................ - 14 -

*Robinson v. Midland Funding, LLC,* 2011 U.S. Dist. LEXIS 40107 (S.D. Cal. Apr. 13, 2011) .................................................................................................... - 14 -

*Sapan v. Auth. Tax Servs., Ltd. Liab. Co.*, No. 13cv2782 JAH (JLB), 2014 U.S. Dist. LEXIS 196025, at *6-7 (S.D. Cal. July 8, 2014) ...................................... - 21 -

*Self-Forbes v. Advanced Call Ctr. Techs., LLC,* No. 17-15804, 2018 WL 5414613 at *2 (9th Cir. Oct. 29, 2018) .......................................................................... - 17 -

*Singer v. Las Vegas Athletic Clubs,* 376 F.Supp.3d 1062, 1073 (D. Nev. Mar. 25, 2019) ......................................................................................................... - 17 -

*Tovar v. Midland Credit Management,* 2011 U.S. Dist. LEXIS 40103 (S.D. Cal. April 13, 2011) ................................................................................................ - 14 -

*Van Patten v. Vertical Fitness Group, LLC,,* 847 F.3d 1037, 1047 (9th Cir. 2017) .. - 17 -

*Zondlo v. Allied Interstate, LLC,* 290 F. Supp. 3d 296 M.D. Pa. Feb. 12, 2018). - 14 -

**Statutes**

47 U.S.C. § 227 ............................................................................................. - 7 -

47 U.S.C. § 227(a)(1) ................................................................. - 11 -, - 13 -

47 U.S.C. § 227(b)(1)(A)(iii) ......................................................................... - 12 -

47 U.S.C. § 227(b)(3)(B) ............................................................................... - 20 -

47 U.S.C. § 227(b)(3)(C) ................................................- 20 -

**Rules**

Fed. R. Civ. P. 56(c)..................................................- 10 -

**Regulations**

*In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 199,* 30 FCC Rcd 7961 para. 69 (2015).......................................- 16 -

*In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991,* 27 FCC Rcd 1830 (2012)................................................- 16 -

*In re the Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991,* 18 FCC Rcd. 14014, 14017 (2003) ..............................- 12 -

*In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991 (2015 FCC Order),* 30 FCC Rcd. 7961, 7972-78 (2015). .....................- 12 -

## TABLE OF CONTENTS

**I.** INTRODUCTION ................................................................- 7 -

**II.** STATEMENT OF FACTS ...............................................- 7 -

**III.** LEGAL STANDARD ...................................................- 10 -

**IV.** ARGUMENT ..................................................................- 11 -

  **A.** DEFENDANT VIOLATED THE TCPA ...................................- 11 -

  **B.** DEFENDANT USED AN AUTOMATIC TELEPHONE DIALING SYSTEM TO CONTACT PLAINTIFF AFTER PLAINTIFF REVOKED CONSENT TO BE CALLED ................................................- 11 -

  **C.** PLAINTIFF TWICE EFFECTIVELY REVOKED CONSENT TO BE CONTACTED ON NOVEMBER 19, 2015..................................- 16 -

  **D.** DEFENDANT KNOWINGLY AND/OR WILLINGLY VIOLATED THE TCPA BY CONTINUING TO CALL PLAINTIFF AFTER HE EFFECTIVELY REVOKED CONSENT TO BE CALLED....................- 20 -

**V.** CONCLUSION...............................................................- 22 -

## I.   INTRODUCTION

Plaintiff, Henry Mendoza ("Plaintiff" or "Mr. Mendoza"), is entitled to summary adjudication with respect to his claim under the Telephone Consumer Protection Act ("TCPA") 47 U.S.C. § 227, because there are no genuine issues of material fact upon which Defendant, Allied Interstate ("Defendant" or "Allied"), can rely to defend against that claim. Defendant undeniably used an automatic telephone dialing system ("ATDS") to call Plaintiff in a harassing and annoying manner when Defendant lacked the requisite consent to call Plaintiff. Defendant's relentless efforts to collect on an alleged debt caused Plaintiff stress, anxiety and annoyance.

## II.   STATEMENT OF FACTS

Plaintiff is a consumer who owns and runs his own business with his wife, The HTM Company. *See* Plaintiff's Local Rule 56-1 Statement of Uncontroverted Facts and Conclusions of Law in Support of Plaintiff's Motion for Partial Summary Judgment ("SUFC") at ¶ 29; *See* Deposition of Henry Mendoza attached hereto as Exhibit A at pp. 84:23-85:15. On February 28, 2011, Plaintiff applied and was approved for a JCPenney-branded credit card ending in "9002" ("JCPenney x9002"). SUFC at ¶ 1. In November of 2013, Plaintiff applied and was approved for a JC Penney-branded credit card ending in "3032" ("JCPenney x3032"). *Id.* at ¶ 3. When Plaintiff signed up for both the JCPenney x9002 and the JCPenney x3032

accounts, Plaintiff listed his cellular telephone number, (714) 600-5178, as his primary contact number. *Id.* at ¶¶ 2, 4. In early 2015, Plaintiff began to experience extreme financial hardship as a result of difficulties with his business. *Id.* at ¶ 30. As a result of this hardship, Plaintiff was unable to make payments on his Synchrony accounts including his JCPenney x9002 and JCPenney x3032 accounts. *Id*.

On or about November 15, 2015, Synchrony Bank ("Synchrony") began placing calls to Plaintiff's cellular phone number, (714) 600-5187, in an attempt to collected alleged debts, including Plaintiff's JCPenney x9002 and JCPenney x3032 accounts. *Id.* at ¶ 5; *See* Qorus x9002 and x3032 Account Summaries, ALLIED Bates No. 000001-8, 000081-90 attached hereto as Exhibit B. On November 19, 2015, at 9:25 a.m. Plaintiff answered a collection call from Synchrony. SUFC at ¶ 6; *See* Deposition of Sergey Kolosovskiy attached hereto as Exhibit C; *See* Recordings of Client Revocations attached hereto as Exhibit D. During the call Plaintiff spoke to a Synchrony agent and unequivocally revoked consent to be called on his cellular phone. On that same day, Synchrony called Plaintiff again. *Id*. During this second call, Plaintiff informed Synchrony again that he did not want to be called on his cellular phone. *Id*. As a result of the requests, Synchrony noted that both Plaintiff's JCPenney x3032 and JCPenney x9002 accounts should be dialed manually due to consent issues. SUFC at ¶¶ 23-26; *See* Synchrony Financial

Supplier Business Requirements, ALLIED Bates No. 000155-158, attached hereto as Exhibit E at ALLIED Bates No. 000156; Declaration of Alla Gulchina ¶ 9, Exhibit B.

Defendant is a vendor/debt collector for Synchrony and utilizes the aQrate phone system to make outgoing calls. SUFC at ¶¶ 7, 14; *See* Master Collection Services Agreement, ALLIED Bates No. 000160-211, attached hereto as Exhibit F. On April 22, 2016 and May 12, 2016 Synchrony assigned Plaintiff's JCPenney x3032 and JCPenney x9002 accounts, respectively, to Defendant for collection. SUFC at ¶ 35. Defendant received Plaintiff's cellular phone number from Synchrony and began placing collection calls to that number even though Plaintiff revoked consent with Synchrony to be called. *Id*. at ¶¶ 9, 11. At no time did Plaintiff give Defendant express consent to call him on his cellular phone. *Id* at 12. Further, Defendant never attempted to communicate with Plaintiff in order to get consent or establish a contract of some sort with Plaintiff. *Id.* at ¶ 13.

Between the dates of April 22, 2016 and June 6, 2016 (45 days), Defendant placed approximately three hundred and fifty-six (356) collection calls to Plaintiff's cellular phone without having consent to make any auto-dialed calls. *Id*. at ¶ 9. Defendant placed collection calls to Plaintiff almost every day, with Plaintiff receiving between four (4) to ten (10) calls in a single day. *Id.* at ¶ 10.

Defendant's calls to Plaintiff through June of 2016 worsened the stress and anxiety that Plaintiff was already feeling as a result of his financial hardship. *Id.* at ¶ 30. Plaintiff uses his personal cellular phone as his work phone, and often uses his phone to speak with clients. *Id*. at ¶ 31. Defendant's incessant calls caused Plaintiff to become uncertain about whether or not calls were coming in from clients. *Id.* at ¶ 32. In turn, this caused Plaintiff to lose business as this affected him from answering calls from prospective clients. *Id*. Further, Plaintiff was taking medication to help treat high blood pressure and diabetes and the calls from Defendant to Plaintiff exacerbated Plaintiff's symptoms related to these conditions. *Id.* at ¶ 33. Altogether, as a result of Defendant's collection calls to Plaintiff, Plaintiff experienced migraines, sleeplessness and generalized persistent anxiety which affected his physical and mental health. *Id*. at ¶ 34.

## III.   LEGAL STANDARD

Summary judgment is appropriate where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). On a motion for summary judgment, the moving party bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the record that establish the absence of a material issue of fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). In determining

whether summary judgment is appropriate, a court must resolve all ambiguities and draw all reasonable inferences against the moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). Summary judgment is appropriate in favor of Plaintiff because there are no material issues of fact as presented by the Plaintiff in this Motion.

## IV.    ARGUMENT

### A. **DEFENDANT VIOLATED THE TCPA**

To prevail on his TCPA claim, Plaintiff must show that 1) the Defendant called his cellular phone, 2) using an automatic telephone dialing system ("ATDS"), 3) without his consent. In the instant case, Defendants called Plaintiff's cellular phone over three hundred and fifty times using an ATDS without consent to contact him.

### B. **DEFENDANT USED AN AUTOMATIC TELEPHONE DIALING SYSTEM TO CONTACT PLAINTIFF AFTER PLAINTIFF REVOKED CONSENT TO BE CALLED**

The TCPA defines an "automatic telephone dialing system" as "equipment that has the capacity — (A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." 47 U.S.C. § 227(a)(1). The TCPA does not define the term "capacity." The FCC, which **Congress vested with authority** to prescribe regulations implementing the

TCPA's requirements, has interpreted an ATDS as "cover[ing] any equipment that has the specified capacity to generate numbers and dial them without human intervention, regardless of whether the numbers called are randomly or sequentially generated or come from calling lists." *In re the Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 FCC Rcd. 14014, 14017 (2003).

Under the TCPA, it is unlawful to make calls to a cell phone using an automatic telephone dialing system ("ATDS") without the called party's prior consent. *See* 47 U.S.C. § 227(b)(1)(A)(iii). In 2015, the FCC issued a declaratory order (the "2015 Order") suggesting that an ATDS may include systems that dial from "a fixed set of numbers," despite lacking the capability to dial randomly or sequentially. *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991 (2015 FCC Order),* 30 FCC Rcd. 7961, 7972-78 (2015). Following the 2015 Order, the FCC's definition of an ATDS was challenged in the D.C. Circuit which ultimately resulted in a decision in the case of *ACA Int'l v. FCC,* 855 F.3d 687 (D.C. Cir. 2018). In the wake of *ACA Int'l,* the Ninth Circuit `recently took up the issue of what qualifies as an ATDS, taking guidance from the *ACA* ruling. *Marks v. Crunch San Diego, LLC,* 904 F.3d, 1041, 1049 (9th Cir. 2018). Under *Marks*, the definition of an ATDS is "equipment which has the capacity- (1) to store numbers to be called **or** (2) to produce numbers to be

called, using a random or sequential number generator- and to dial such numbers automatically (even if the system must be turned on or triggered by a person.)" *Id.* at 1052 (emphasis added). Under the 9th Circuit precedent of *Marks* there is no dispute that Defendant's system is an ATDS.

Furthermore, the Ninth Circuit has stated the FCC "defined 'automatic telephone dialing system' to include predictive dialers." *Meyer v. Portfolio Recovery Associates, LLC,* 707 F.3d 1036, 1043 (9th Cir. Cal. 2012). The FCC Order [in *Meyer*] states predictive dialers are "automated telephone dialing systems" in that they have the capacity to store and dial phone numbers. *Id.* Predictive dialers, which is "equipment that can dial automatically from a given list of telephone numbers using algorithms to predict" when consumers will be available, qualify as ATDS. *ACA Int'l v. FCC,* No. 15-1211, 2018 U.S. App. LEXIS 6535, at * 8 (D.C. Cir. Mar. 16, 2018). The FCC reiterated, based on the 2003 FCC Order, that the "basic function" of an ATDS is the "capacity to dial numbers without human intervention." *In the Matter of Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991,* 30 F.C.C.R. 7961, 7975 (2015); *see also 2003 FCC Order,* 18 F.C.C. R. 14014, 14029 (2003) ("The basic function of such equipment, however has not changed – the capacity to dial numbers without human intervention."). The "FCC ruled predictive dialers used by debt collectors fall within the meaning of autodialers." *Tovar v. Midland Credit Management,* 2011 U.S. Dist.

LEXIS 40103 (S.D. Cal. April 13, 2011). The FCC Order states predictive dialers are "automated telephone dialing systems" in that they have the capacity to store and dial phone numbers.1

In making its calls, Defendant uses aQrate to make outgoing calls to consumers. SUFC at ¶ 14. On a number of occasions, aQrate has previously been held to be an ATDS given its functionality. *See Morse v. Allied Interstate, LLC*, 65 F. Supp. 3d 407 (M.D.Pa. Dec. 10, 2014) ("[D]efendant's system cannot in its current state randomly or sequentially generate telephone numbers. But, the system has the capacity to store and dial random and sequential numbers if provided with a list of such numbers which is uploaded into a mapping field specifically designed to receive such a list."); *see also Zondlo v. Allied Interstate, LLC,* 290 F. Supp. 3d 296 M.D. Pa. Feb. 12, 2018) (Because the same issue was litigated in *Morse* and "[t]he parties agree that there have not been any 'material' or 'major' changes to the dialing software since *Morse*" the issue of ATDS will not be litigated.).

Pursuant to the *Marks* standard, Defendant's aQrate system is clearly an ATDS. The basic function of an ATDS is to dial numbers from a stored list without the need for human intervention. As stated by Mr. Kolosovskiy, the aQrate system

---

1 1 *See* FCC Order cited in *Meyer v. Portfolio Recovery Assocs., LLC*, 707 F.3d 1036, 1043 (9th Cir. 2012), *Robinson v. Midland Funding, LLC,* 2011 U.S. Dist. LEXIS 40107 (S.D. Cal. Apr. 13, 2011) (same); *Nelson v. Santander Consumer USA, Inc*., 931 F. Supp. 2d 919, 928-930 (W.D. Wis. 2013)(vacated after settlement)(Court calls Defendant's argument to the contrary perilously close to violating Fed. R. Civ. P. 11).

is one that runs 24 hours per day, 7 days a week with the capacity to make as many as 50,000 outgoing calls per day. SUFC at ¶ 36.  Furthermore, all the collection agents need to do is to notify the system they are available to receive calls by logging in as "ready to work." *Id.* at ¶¶ 15-16. The agent has no control over who he/she calls and instead the calls are randomly assigned to the agent by aQrate's software from an existing call list. *Id.* at ¶¶ 17-18. Once the call is assigned it triggers the phone system to dial the call. *Id.* at ¶¶ 15-16. Defendant's phone system operates in two different dialing modes, predictive and preview. *Id*. Under both dialing modes, aQrate dials all telephone numbers. *Id*. at ¶¶ 15-17. The lists or campaigns from which the telephone numbers are dialed are also created by Defendant's telephony system. *Id.* at ¶¶ 18-19. Other than inputting the information provided by Synchrony Bank into their database, there is no human involvement in creating the campaigns, connecting agents to consumers or dialing telephone numbers. In fact, the system is so automated that all communications between Defendant's programs are completed by previously coded software and programming modules. *Id.* at ¶¶ 18-20. The issue of whether the Defendant's telephony system employs a predictive dialer that dials numbers from a stored list is undisputed. Therefore, the Court should grant the Motion for Partial Summary Judgment on this issue.

## C. **PLAINTIFF TWICE EFFECTIVELY REVOKED CONSENT TO BE CONTACTED ON NOVEMBER 19, 2015**

The Court should grant Plaintiff's Motion for Partial Summary Judgment because Plaintiff effectively revoked consent to be called, and after his revocation, the Defendant continued its bombardment of calls to Plaintiff's cell phone using an ATDS.

In October of 2013, the FCC required that telemarketers obtain prior express written consent to contact consumers using an ATDS. *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991,* 27 FCC Rcd 1830 (2012). Following this edict, the FCC has repeatedly and clearly stated that consent can be revoked by any reasonable means, including orally. *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 199,* 30 FCC Rcd 7961 para. 69 (2015).

In its 2015 order, the FCC highlighted many decisions supporting its view that oral revocation was reasonable under the statute.  The FCC stated that "Several appellate and district courts have held that consent under the TCPA can be revoked, and that [communications] sent after consent is revoked violate the TCPA." *Reardon v. Uber Technologies, Inc.*, 115 F.Supp.3d 1090, 1102 (N.D. Cal., 2015); *See also*, *Gager v. Dell Financial Services, LLC*, 727 F.3d 265 (3d. Cir. 2013) (the court held that "the TCPA allows consumers to revoke their prior express consent" and that it "is consistent with the basic common law principle that

consent is revocable."); *Gutierrez v. Barclays Grp.*, Case No. 10CV1012 DMS BGS, 2011 WL 579238, at *4 (S.D.Cal. Feb. 9, 2011). The 2015 FCC Order makes clear "that consumers may revoke consent through any reasonable means, either orally or in writing. *Reardon*, 115 F.Supp.3d 1092 (See 2015 FCC Order, ¶¶ 55, 64.) "Ninth Circuit courts, applying *Van Patten,* have held that prior express written consent, even if obtained through a contract between the parties, does not preclude a party from revoking consent." *Singer v. Las Vegas Athletic Clubs,* 376 F.Supp.3d 1062, 1073 (D. Nev. Mar. 25, 2019) (*See, e.g., Self-Forbes v. Advanced Call Ctr. Techs., LLC,* No. 17-15804, 2018 WL 5414613 at *2 (9th Cir. Oct. 29, 2018) (reversing grant of summary judgment in the defendant's favor on consent revocation notwithstanding the plaintiff's prior consent to be called under the terms of her credit card application); *Herrera v. First Nat'l Bank of Omaha, N.A.,* No. 2:17-cv-01136-RSWL-SKA, 2017 WL 6001718, at *3 (C.D. Cal. Dec. 4, 2017); *Jara v. GC Servs. Ltd. P'ship,* No. 2:17-cv-04598-ODW-RAO, 2018 WL 2276635, at *3 (C.D. Cal. May 17, 2018). "Consumers may revoke their consent, orally or in writing, to be contacted under the TCPA, but '[r]evocation of consent must be clearly made and [the consumer] must express a desire not to be called . . .'" *Singer*, 376 F.Supp.3d at 1074; citing *Van Patten v. Vertical Fitness Group, LLC,,* 847 F.3d 1037, 1047 (9th Cir. 2017).

There is no factual dispute in this matter that Plaintiff revoked any prior express consent to be called with Synchrony Bank. On November 19, 2015, in two separate conversations with Synchrony Bank, Plaintiff clearly and unequivocally stated that he did not want to be called again. SUFC at ¶ 6. After Plaintiff revoked consent to be called, two of his outstanding retail accounts were sent to Defendant for collections. *Id.* at ¶ 35. Defendant began calling Plaintiff on his cellular phone in April 2016. *Id. at* ¶ 8. At the time of the calls Defendant had no permission to call Plaintiff, because Plaintiff revoked consent to be called with Synchrony Bank and as such, the company could not transfer consent to Defendant. During Mr. Sergey Kolosovskiy's (Defendants Senior Vice President of Software Development) deposition, he admitted that Defendant's permission to call Plaintiff originated with Synchrony Bank and if Synchrony didn't have consent to contact Plaintiff, Defendant didn't have consent.

> Q. And you only got Mr. Mendoza's cell phone number
> from Synchrony Bank?
> A. Based on my understanding, the answer is yes.

Sergey Kolosovskiy Depo. 134:24- 135:1

> The Witness:
> Based on analysis, I don't expect that
> we actually ever contact or spoke with Mr. Mendoza
> for to get information out or agreement.
> By Attorney Gulchina:
> Q. Including consent?
> A. Based on my understanding, yes.
> Q. So any consent that Allied Interstate had to

call him was through Synchrony Bank?
A. That's a correct statement.
*Id.* at 135:16-25

By Attorney Gulchina:
Q. So you stated before that Allied's consent
to contact Mr. Mendoza was through Synchrony Bank.
Correct?
A. Correct.
Q. And if Synchrony Bank never had consent to
contact him, then they never had the opportunity to
give Allied Interstate consent to contact him.
Correct.
[. . .]
The Witness:
If they had not, your statement is
correct.
*Id.* at 136:23- 137:11.

In this case, Synchrony Bank did not have the requisite consent to call

Plaintiff at the time of the assignment of the accounts to Defendant. Per Synchrony

Bank's Cell Phone Scrub Policy dated March 7, 2016, one month before the first

account was assigned to Defendant, mobile phone numbers with an "X" notation

should be dialed manually. SUFC at ¶ 25. Similarly, all non-consent accounts will

have a "U" notation which indicates that the account should be worked manually.

SUFC at ¶ 23. It is undisputed that Plaintiff's cell phone number was marked with

a "U" and "X" notation on several pages of Synchrony Bank's account notes. *Id.* at

at ¶¶ 24, 26; Gulchina Decl. ¶ 9, Exhibit B. These notes, while not compiled by

Defendant, were disclosed by Defendant through discovery further proving that

Defendant was in possession of such documents. *Id.*

Furthermore, after listening to the two communications, provided by Defendant, wherein Plaintiff requested that he no longer receive calls Mr. Kolosovskiy confirmed he heard Plaintiff make that request. SUFC at ¶ 6.

Therefore, it is undisputed that Plaintiff clearly and unequivocally requested that he no longer be called. Therefore, the Court should grant the Motion for Partial Summary Judgment on this issue.

### D. DEFENDANT KNOWINGLY AND/OR WILLINGLY VIOLATED THE TCPA BY CONTINUING TO CALL PLAINTIFF AFTER HE EFFECTIVELY REVOKED CONSENT TO BE CALLED

Violation of the TCPA entitles the Plaintiff to an award of five hundred dollars ($500.00) in statutory damages for each and every violation pursuant to 47 U.S.C. § 227(b)(3)(B). If the Court finds that Defendant knowingly and/or willfully violated the TCPA, the Plaintiff is entitled to an award of one thousand five hundred dollars ($1,500.00) for each and every violation pursuant to 47 U.S.C. § 227(b)(3)(B) and 47 U.S.C. § 227(b)(3)(C). "The Court need not decide in the instant case whether knowledge of the law is required before a treble damages award may be made under the TCPA." *J2 Glob. Communs., Inc. v. Blue Jay, Inc.*, No. C-08-4254 PJH (EMC), 2009 U.S. Dist. LEXIS 111609, at *21 (N.D. Cal. Aug. 4, 2009). Either knowingly violating the TCPA or "simply knowingly sending an unsolicited communication" is enough to award treble damages. *Id.* at *21. Morever, "Defendant knowingly or willfully violates the TCPA

where Plaintiff notifies Defendant to stop calling and Defendant disregards the request." *Sapan v. Auth. Tax Servs., Ltd. Liab. Co.*, No. 13cv2782 JAH (JLB), 2014 U.S. Dist. LEXIS 196025, at *6-7 (S.D. Cal. July 8, 2014; *See Olney v. Progressive Cas. Ins. Co.*, 993 F. Supp. 2d 1220, 2014 WL 294498, *7 (S.D. Cal. Jan. 24, 2014).

In the case before us, it is undisputed that Plaintiff revoked consent on two separate occasions from Synchrony Bank. SUFC at ¶¶ 5-6. It is also undisputed that Synchrony Bank notated Plaintiff's cell phone number to indicate the account and phone number should be handled manually. *Id*. at ¶¶ 23- 26. It is also undisputed that Defendant ignored Synchrony Bank's notations and called Plaintiff over three hundred-fifty times in approximately six weeks. *Id*. at ¶ 9. The undisputed evidence is attached to this Motion and discussed above. Defendant was subject to Synchrony Bank's scrub policy which explained the meaning of the "U" and "X" designations clearly. *Id*. at ¶¶ 23- 26. The cell phone scrub was completed on Plaintiff's cell phone number prior to the assignment of the accounts and notated as accounts that needed to be dialed manually. *Id*. at ¶ 24. Defendant willfully disregarded the scrub policy and the accompany notations on Plaintiff's cellular phone number and continued to bombard him with calls.

## V.   CONCLUSION

Plaintiff provided undisputed facts that Defendant (1) called Plaintiff on his cellular phone, (2) Defendant used an automatic telephone dialing system, (3) the Defendant called Plaintiff without consent because Plaintiff revoked consent on two separate occasions and (4) Defendant willfully and/or knowingly violated the TCPA by calling Plaintiff without consent and negligently disregarding Synchrony Bank's policy and do not call notations. Therefore, the Court should award Plaintiff one-thousand five hundred dollars ($1,500.00) per violation of the TPCA for a total of $534,000 plus any fees and costs the Court should deem appropriate.  For the foregoing reasons, Plaintiff respectfully requests that this Court grant Plaintiff's Motion for Partial Summary Judgment on the claim of the TCPA.

Dated: September 23, 2019                    RESPECTFULLY SUBMITTED,

By:*/s/ Brian Brazier*                            By:*/s/ Lauren Tegan Rodkey*
Brian Brazier, Esq.                              Lauren Tegan Rodkey, Esq.
**PRICE LAW GROUP, APC**              **PRICE LAW GROUP, APC**
8245 North 85th Way                            6345 Balboa Blvd, Suite 247
Scottsdale, AZ 85258                            Encino, CA 91316
T: (818) 600-5587                                T: (818) 600-5526
F: (818) 600-5464                                F: (818) 600-5426
E: brian@pricelawgroup.com              E: tegan@pricelawgroup.com

Attorneys for Plaintiff,
*Henry Mendoza*