Stuart M. Richter (CA 126231)
**stuart.richter@kattenlaw.com**
Gregory S. Korman (CA 216931)
gregory.korman@kattenlaw.com
Paul A. Grammatico (CA 246380)
paul.grammatico@kattenlaw.com
**KATTEN MUCHIN ROSENMAN LLP**
515 S. Flower St., Suite 1000
Los Angeles, CA 90071-2212
Telephone:   213.443.9017
Facsimile:   213.443.9001

Attorneys for defendant, Allied Interstate, LLC

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| Henry Mendoza,<br><br>        Plaintiff,<br><br>    v.<br><br>Allied Interstate, LLC,<br><br>        Defendant. | Case No. 8:17-cv-00885-JVS-KES<br>Hon. James V. Selna<br><br>**Allied Interstate, LLC's Memorandum of Points and Authorities in Opposition to Plaintiff's Motion for Partial Summary Judgment**<br><br>[Filed Concurrently with Statement of Genuine Disputes Pursuant to Local Rule 56-3, Declaration of Paul A. Grammatico, and Evidentiary Objections]<br><br>Date:          October 21, 2019<br>Time:         1:30 p.m.<br>Place:        Courtroom 10C<br><br>Complaint Filed:   May 19, 2017<br>Trial Date:          December 10, 2019 |

# **TABLE OF CONTENTS**

                                                                                    **Page**

I.      INTRODUCTION. .......................................................................................1

II.     UNDISPUTED FACTS.................................................................................2

        A.      Collection Calls on JC Penney Accounts. ...................................2

        B.      Plaintiff Settled all of the Claims Raised in this Action in his
                Settlement with Synchrony. ..........................................................3

III.    RELEVANT LAW........................................................................................4

        A.      Plaintiff's Evidence is Insufficient to Show Revocation on the
                Two JC Penney Accounts Prior to April 22, 2016. ......................5

                1.      Plaintiff Admits He Gave Prior Express Consent to be
                        Called on the JC Penney Accounts. ...................................5

                2.      The Evidence Plaintiff Relies Upon is Inadmissible. ........6

                3.      Even if the Declaration and the Calls were Admissible, they
                        Do not Establish a Revocation on the JC Penney Accounts..........8

        B.      Plaintiff Could not Have Unilaterally Revoke Consent to be
                Contacted in Breach of an Express Term of a Contract. .......................10

        C.      Plaintiff's TCPA Claim is Barred because Allied Made the Calls in
                Good Faith..............................................................................................11

        D.      Plaintiff's Evidence Fails to Establish that Allied Called Him with
                an ATDS. ...............................................................................................12

        E.      Plaintiff's TCPA Claim is Barred by the One-Satisfaction Rule
                based on Plaintiff's Settlement with Synchrony. ...................................13

        F.      Plaintiff's Argument for Treble Damages is Frivolous based on the
                Fact that Plaintiff Admitted He has No Evidence that Allied was
                Aware of a Revocation. ........................................................................15

V.      CONCLUSION. ........................................................................................15

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*AG v. South Bay Dreams Cooperative, Inc.*,
Case No. 16-cv-02598-L (RNB), 2018 WL 2002370 (S.D. Cal.
Apr. 30, 2018)..................................................................................................5

*Ammons v. Ally Financial, Inc.*,
326 F. Supp.3d 578 (M.D. Tenn. 2018) .........................................................6

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1968).........................................................................................4

*Barton v. Credit One Fin.*,
No. 16CV2652, 2018 WL 2012876 (N.D. Ohio Apr. 30, 2018).........................11

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986).........................................................................................4

*Chisholm v. UHP Projects, Inc.*,
205 F.3d 731 (4th Cir. 2000) .........................................................................14

*Chyba v. First Financial Asset Management, Inc.*,
No. 12-cv-1721-BEN (WVG), 2014 WL 1744136 (S.D. Cal. Apr.
30, 2014) .............................................................................................2, 6, 12, 13

*Clark v. Capital Credit & Collection Services*,
460 F.3d 1162 (9th Cir. 2005) ................................................................11, 12

*Gomez v. Campbell-Edwald Co.*,
768 F.3d 871 (9th Cir. 2014) .........................................................................14

*Gutierrez v. Barclays Group*,
No. 10cv1012 DMS (BGS), 2011 WL 579238 (S.D. Cal. Feb. 9,
2011) .................................................................................................................9

*Herrick v. GoDaddy.com LLC*,
312 F.Supp.3d 792 (D. Ariz. 2018) ...............................................................12

*Hudson v. Sharp Healthcare*,
No. 13–CV–1807–MMA (NLS), 2014 WL 2892290 (S.D. Cal.
June 25, 2014)...................................................................................................9

*In the Matter of Rules & Regulations Implementing the Tel. Consumer*
    *Prot. Act of 1991,*
      30 F.C.C. Rcd. 7961 (2015) ................................................................................... 6

*In re Rules & Regulations Implement the Telephone Consumer*
    *Protection Act of 1991,*
      7 F.C.C. Rcd. 8752 (Oct. 16, 1992) ...................................................................... 5

*Jack v. Trans World Airlines, Inc.,*
    854 F. Supp. 654 ........................................................................................................ 7

*Jara v. GC Servs. Lim. Partnership,*
    2:17-cv-04598-ODW-RAO, 2018 WL 2276635 (C.D. Cal. May 17,
    2018) .......................................................................................................................... 9

*Lindsay v. Westwood Lim. Partnership,*
    Case No. 2:17-cv-0333-ODW(AS), 2018 WL 4006425 (C.D. Cal.
    Aug. 17, 2018) .......................................................................................................... 4

*Lucoff v. Navient Solutions, LLC,*
    No. 18-CIV-60743-RAR, 2019 WL 3773313 (S.D. Fla. Aug. 7,
    2019), *appeal docketed*, No. 19-13482 (11th Cir. Sept. 6, 2019) ....................... 11

*Marks v. Crunch San Diego, LLC,*
    904 F.3d 1041 (9th Cir. 2018) ......................................................................... 12, 13

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,*
    475 U.S. 574 (1986) ................................................................................................. 5

*Medley v. Dish Network, LLC,*
    No. 8:16-cv-2534-T-36TBM, 2018 WL 4092120 (M.D. Fla. Aug.
    27, 2018) .................................................................................................................. 11

*Olney v. Progressive Cas. Ins. Company,*
    993 F. Supp. 2d 1220 (S.D. Cal. 2014) .................................................................. 15

*Orr v. Bank of America, NT & SA,*
    285 F.3d 764 (9th Cir. 2002) .................................................................................... 8

*Reyes v. Lincoln Automotive Fin. Servs,*
    861 F.3d 51 (2nd Cir. 2017) ............................................................................. 10, 11

*Saunders v. NCO Fin. Sys., Inc.,*
    910 F. Supp. 2d 464 (E.D.N.Y. 2012) ..................................................................... 9

*Seymour v. Summa Vista Cinema, Inc.*,
 809 F.2d 1385 (9th Cir. 1987) ............................................................................. 13

*True Healthcare Chiropractic Inc. v. McKesson Corp.*,
 No. 13-cv-02219-HSG, 2019 WL 3804713 (N.D. Cal. Aug. 13,
 2019) ....................................................................................................................... 5

*Uthe Tech. Corp. v. Aetrium*,
 808 F.3d 755 (9th Cir. 2015) ............................................................................... 13

*Van Asdale v. Int. Game of Tech.*,
 577 F. 3d 989 (9th Cir. 2009) ................................................................................ 7

*Van Patten v. Vertical Fitness Grp., LLC*,
 847 F.3d 1037 (9th Cir. 2018) ....................................................................... *passim*

*Yeager v. Bowlin*,
 693 F.3d 1076 (9th Cir. 2012) ............................................................................... 8

*Zenith Radio Corp. v. Hazeltine Research, Inc.*,
 401 U.S. 321 (1971) ............................................................................................. 13

**Statutes**

47 U.S.C. § 227(a)(1) ................................................................................................ 12

47 U.S.C. § 227(b)(1)(A) ............................................................................................ 5

47 U.S.C. § 227(b)(3) ................................................................................................ 15

**Rules**

Fed. R. Civ. P. 56(c) ................................................................................................... 4

Fed. R. Evid. § 801 ..................................................................................................... 8

Fed. R. Evid. § 802 ..................................................................................................... 8

1    **I.    INTRODUCTION.**

2         Henry Mendoza ("Plaintiff") brings claims against Allied Interstate, LLC

3    ("Allied"), for violations of the Telephone Consumer Protection Act ("TCPA"), Fair

4    Debt Collection Practices Act ("FDCPA"), and Rosenthal Fair Debt Collection

5    Practices Act ("RFDCPA") based on a series of collection calls to two delinquent

6    Synchrony Bank/JC Penney accounts (the "JC Penney Accounts"). Plaintiff filed this

7    motion for partial summary judgment as to the TCPA claim only. Allied has filed a

8    motion for summary judgment as to all of the claims that is set for hearing at the same

9    time.

10        It is undisputed, and Plaintiff's motion openly concedes, that when he opened

11   the JC Penney Accounts, he consented to receiving auto-dialed collection calls to his

12   cellular phone in the event of delinquency. Plaintiff's motion, therefore, hinges on the

13   contention that there is undisputed evidence that Plaintiff **revoked** consent for calls

14   on both JC Penney Accounts **before** Allied began calling him. This proposition is

15   demonstrably false.

16        In fact, there is no admissible evidence whatsoever that Plaintiff revoked

17   consent regarding the JC Penney Accounts **at any time**. In sworn discovery responses,

18   Plaintiff failed to offer any facts demonstrating revocation. Instead, he provided, under

19   oath, incoherent responses to Allied's request for a description of "every

20   communication . . . with any debt collector regarding the two JC Penney accounts[.]"

21   *See* Additional Undisputed Fact ("AUF"), No. 4. Plaintiff's purported evidence of

22   revocation—unauthenticated (and thus entirely inadmissible) telephone calls that refer

23   to other delinquent accounts and a sham declaration stating a legal conclusion (but no

24   facts) that he revoked to Synchrony Bank in 2015 (months before he admitted the

25   collection calls on the JC Penney Accounts even began)—cannot establish revocation

26   as a matter of law. Were the calls admissible, they would fail anyway because the date

27   of the calls are not specified and the creditor explicitly refers to other accounts not

28   subject to this lawsuit.

1   The core problem with Plaintiff's case is that he had at least six different

2   delinquent credit cards and apparently multiple creditors collecting on all of them. As a

3   result, Plaintiff has no recollection of whom he spoke with, when, or what was said,

4   nor did he take any notes about these calls that he has preserved for discovery.

5   Plaintiff's hazy recollection of **maybe** speaking to one of his creditors (not Allied) at

6   some unspecified time cannot possibly constitute a legal revocation. This is especially

7   true where Plaintiff attests that his "revocation" call occurred **before** any collections

8   whatsoever even commenced on the JC Penney Accounts.

9   Even if Plaintiff's proffered evidence of revocation were admissible (it is not)

10   and undisputed (Plaintiff's own statements are not even consistent), there are multiple

11   other reasons that Plaintiff's motion should be denied. *First*, even if Plaintiff had

12   attempted to revoke consent, he was contractually barred from doing so unilaterally

13   based on the "Consent to Communications" provisions in the two credit card

14   agreements. *Second*, because it is undisputed that Allied was not aware of any

15   revocation and Plaintiff, in fact, conceded in discovery that he has no evidence that

16   Allied was aware of a revocation, any TCPA claim is barred by the fact that Allied

17   made the calls in good faith. *Third*, Plaintiff has presented insufficient evidence that the

18   system Allied used to call him qualified as an automatic dialer under the TCPA. *Finally*,

19   the TCPA claim is barred by the one-satisfaction rule based on Plaintiff's prior

20   settlement agreement with Synchrony (who has since been dismissed). Plaintiff's

21   motion should be denied and summary judgment should be granted in favor of Allied.

22   **II.   UNDISPUTED FACTS.**

23   **A.   Collection Calls on JC Penney Accounts.**

24   Plaintiff sues Allied in connection with two JC Penney/Synchrony credit card

25   accounts, one ending in 9092 and one ending in 3032. Plaintiff's Undisputed Fact

26   ("UF"), No.'s 1-4. Plaintiff provided his credit card number in connection with each

27   credit card application. *Id.* Each of the JC Penney Accounts were governed by an

28

1  account contract that contained a provision consenting for Plaintiff to be contacted by

2  "all channels of communication and for all purposes." AUF, No.'s 1-3.

3      Allied began a series of collection calls to Plaintiff on behalf of Synchrony Bank

4  on or about April 22, 2016. *See* UF, No. 8. Plaintiff contends that five months prior,

5  during two calls with Synchrony Bank on November 19, 2015, he revoked consent for

6  collection calls on the JC Penney Accounts. *See* UF, No. 6. But there is no admissible

7  evidence supporting this fact. The evidence, Plaintiff's sworn deposition testimony and

8  interrogatory responses, demonstrates the opposite. *See* Allied's Response to UF No. 6

9  in Statement of Genuine Disputes. For instance, contrary to Plaintiff's declaration, he

10 ***admitted*** that he never spoke with any debt collector regarding the JC Penney

11 Accounts. AUF, No. 4. Plaintiff's discovery responses also clarify that he ***did not even***

12 ***receive a collection call*** with regard to the two JC Penney Accounts until April of

13 2016. *Id.*, No. 7. Plaintiff makes no effort to reconcile this inconvenient fact with his

14 contention that he "revoked" consent during a collection call ***six months before***

15 collection calls on the JC Penney accounts began. *See id.* and UF, No. 6. Plaintiff has

16 also admitted in discovery that he did not know the date of the any alleged revocation

17 on the JC Penney Accounts (AUF, No. 6) and he does not have any evidence that

18 Allied was aware of a revocation of consent with regard to the two JC Penney

19 accounts (AUF, No. 8). Plaintiff's deposition testimony established further that he was

20 delinquent on at least six credit cards (including the JC Penney cards) and was being

21 called by multiple creditors on each of them. *Id.*, No. 9.

22     **B.**    **Plaintiff Settled all of the Claims Raised in this Action in his**

23     **Settlement with Synchrony.**

24     Plaintiff previously entered into a settlement in which Plaintiff was paid

25 $22,016.62 Synchrony Bank and was given credits of $1,043.52 and $2,822.53 on the

26 two JC Penney Accounts. AUF, No. 9. Plaintiff's claims against Synchrony in the

27 Complaint are based on allegations that Synchrony called him "almost every day" from

28 November 19, 2015, through June 6, 2016. *See* Allied's Response to UF, No. 28 in

1    Statement of Genuine Disputes. Similarly, Plaintiff's claims against Allied are based on
2    allegations that Allied called him "almost every day" between April 22, 2016, and June
3    6, 2016. *Id.* In describing the claims for violations of the TCPA and RFDCPA starting
4    on page 5 of the Complaint, the allegations against Allied and Synchrony are exactly
5    the same; Plaintiff does not distinguish between the two defendants. *Id.* The Recitals
6    section of the settlement agreement with Synchrony states that the "Parties intend to
7    fully and completely settle all claims . . . that were or could have been brought by
8    Claimant in the Litigation[]." *Id.* Litigation in the settlement agreement with Synchrony
9    is defined to include, without limitation, "Central District of California (C.D. Cal.),
10   Case No. 8:17-cv-00885" (the current action). *Id.*

11   **III.   RELEVANT LAW.**

12          Summary judgment is appropriate if the record shows there is no genuine
13   issue as to any material fact and that the moving party is entitled to judgment as a
14   matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).
15   The moving party bears the initial burden of establishing the absence of any issue of
16   material fact. *Celotex*, 477 U.S. at 330. The "materiality" of particular facts is
17   determined by the pleadings and the substantive law. *Anderson v. Liberty Lobby, Inc.*, 477
18   U.S. 242, 248 (1968). "A disputed fact is material where the resolution of that fact
19   might affect the outcome of the suit under the governing law, and the dispute is
20   genuine where the evidence is such that a reasonable jury could return a verdict for the
21   nonmoving party.' *Lindsay v. Westwood Lim. Partnership*, Case No. 2:17-cv-0333-
22   ODW(AS), 2018 WL 4006425, at *1 (C.D. Cal. Aug. 17, 2018) (internal quotations
23   omitted). "Conclusory or speculative testimony in affidavits are insufficient to raise
24   genuine issues of fact and defeat summary judgment." *Lindsay*, 2018 WL 4006425, at
25   *1. There "must be more than a mere scintilla of contradictory evidence to survive
26   summary judgment." *Id.* If the court determines that the record, taken together, could
27   not lead a rational trier of fact to find for the nonmoving party, summary judgment

28

1    must be granted because there is no genuine issue for trial. *Matsushita Elec. Indus. Co. v.*
2    *Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

3    **IV.    ARGUMENT.**

4         **A.    Plaintiff's Evidence is Insufficient to Show Revocation on the Two**
5             **JC Penney Accounts Prior to April 22, 2016.**

6                  **1.    Plaintiff Admits He Gave Prior Express Consent to be Called**
7                      **on the JC Penney Accounts.**

8         "To establish a TCPA claim, a plaintiff must prove that (1) the defendant called
9    a cellular telephone number; (2) using an automatic telephone dialing system; (3)
10   without the recipient's prior express consent." *AG v. South Bay Dreams Cooperative, Inc.*,
11   Case No. 16-cv-02598-L (RNB), 2018 WL 2002370, at *3 (S.D. Cal. Apr. 30, 2018)
12   (internal quotations omitted). "Because the TCPA only protects consumers from
13   unwanted communications, the statute creates a complete affirmative defense for
14   TCPA defendants where a recipient provided 'prior express consent' for calls[.]" *True*
15   *Healthcare Chiropractic Inc. v. McKesson Corp.*, No. 13-cv-02219-HSG, 2019 WL 3804713,
16   at *4 (N.D. Cal. Aug. 13, 2019) (quoting 47 U.S.C. § 227(b)(1)(A)). "[V]oluntary
17   provision of one's number constitutes consent to communications related to the
18   context in which one provides the number." *E.g., id.* (citing *Van Patten v. Vertical Fitness*
19   *Grp., LLC*, 847 F.3d 1037, 1042-43 (9th Cir. 2018)). "'[P]ersons who knowingly release
20   their phone numbers have in effect given their invitation or permission to be called at
21   the number which they have given, absent instructions to the contrary.'" *Van Patten*,
22   847 F.3d at 1044 (quoting *In re Rules & Regulations Implement the Telephone Consumer*
23   *Protection Act of 1991*, 7 F.C.C. Rcd. 8752, 8769 (Oct. 16, 1992)).

24        Here, it is undisputed that Plaintiff voluntarily provided his phone number
25   when he opened the two JC Penney Accounts at issue in this case. UF, No.'s 1-4. It is
26   also undisputed that all of Allied's calls to Plaintiff were an attempt to reach Plaintiff
27   to collect debts owed to Synchrony on the two JC Penney Accounts. *See* UF, No. 8
28   and Allied's response. Because Plaintiff voluntarily provided his phone number and all

of the calls made by Allied were for the purpose of servicing the delinquent accounts, there was prior express consent. *See Van Patten*, 847 F.3d 1045-1046.

### 2. The Evidence Plaintiff Relies Upon is Inadmissible.

As demonstrated above, the undisputed facts show that Plaintiff gave prior express consent to be contacted on the JC Penney Accounts. Since this fact is conceded, Plaintiff holds the burden of establishing that he revoked consent on or before April 22, 2016, the date he contends Allied began calling him. When assessing revocation, the Ninth Circuit has held that "a consumer's consent depends on the transactional context in which it is given. The call or text message must be **based on the circumstance in which the consumer gave his or her number**. The consumer may revoke . . . consent but in that case must clearly express that he . . . does not want to receive the messages or calls." *Van Patten*, 847 F.3d at 1040 (emphasis added).[1]

Here, Plaintiff purports to rely on several pieces of evidence to support a revocation of the two JC Penney Accounts—but all of them are inadmissible. *First*, Plaintiff claims via declaration, without any detail whatsoever (*i.e.*, stating who he spoke with or what precisely was said), that he revoked to Synchrony in two calls on November 19, 2015. *See* UF, No. 6. This unsupported legal conclusion is contradicted by Plaintiff's own sworn deposition testimony and interrogatory responses. Indeed, Plaintiff' discovery responses demonstrate conclusively that he does not know the dates or times that he spoke on the phone with Synchrony. Thus, he lacks personal knowledge to testify to the opposite in his declaration. *See* Evidentiary Objections, No. 2.[2]

---

[1]     The FCC has framed revocation in these terms: "When assessing whether any particular means of revocation used by a consumer was reasonable, we will look to the totality of the facts and circumstances surrounding that specific situation, including, for example, whether the consumer had a reasonable expectation that he or she could effectively communicate his or her request for revocation to the caller in that circumstance, and whether the caller could have implemented mechanisms to effectuate a requested revocation without incurring undue burdens." *Ammons v. Ally Financial, Inc.*, 326 F. Supp.3d 578, 600 n. 24 (M.D. Tenn. 2018) (quoting *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 30 F.C.C. Rcd. 7961, 7966 (2015)).

[2]     See Dec. of Grammatico, Ex. A (Excerpts of Mendoza Depo.), pp. 62-63: 4-25 and 1-5 ("Q: Do you recall when you received those collection calls? A: In that period of time, without looking at

6

1    Furthermore, because Plaintiff's declaration testimony is manifestly self-serving

2    and contrary to his prior sworn testimony, it is a sham and the entire declaration

3    should be stricken. *See Van Asdale v. Int. Game of Tech.*, 577 F. 3d 989, 998 (9th Cir.

4    2009) ("The general rule in the Ninth Circuit is that a party cannot create an issue of

5    fact by an affidavit contradicting his prior deposition testimony." (internal quotations

6    omitted)); *Jack v. Trans World Airlines, Inc.*, 854 F. Supp. 654, 660-62 (sham declaration

7    rule also applies to interrogatory responses). In order for the rule to apply, the Court

8    must make a factual determination that the contradiction was actually a sham and the

9    testimony and the "subsequent affidavit must be clear and unambiguous." *Asdale*, 577

10   F.3d at 989. Here, in Paragraph 2 of Plaintiff's declaration, Plaintiff purports to state

11   the exact date and time of a call with Synchrony Bank when he "revoked consent to be

12   called" to Synchrony Bank with regard to the two JC Penney accounts at issue in this

13   case. These statements clearly and unambiguously contradict multiple portions of his

14   deposition testimony and written discovery responses in which he states the collection

15   activity on the two relevant JC Penney Accounts began in 2016 and he does not

16   remember any of the time and dates of phone calls with Synchrony Bank. *See*

17

18   the call log or anything like that, no."); pp. 82-83, 6-25 and 1-2 ("Q: Do you know when you started
19   receiving calls from Synchrony on the account? A: No."); p. 101: 11-25 ("Q: . . . as you testified
     today, you recall only for sure that you received collection calls from Synchrony Bank; correct? A:
20   Correct . . . Q: When did you start receiving those collection calls? A: "I don't recall."); Dec. of
     Grammatico, Ex. C, Plaintiff's Response to Interrogatory No. 3 (Plaintiff provides no pertinent
21   information in response to question asking to "[d]escribe each and every communication that you
     had with any debt collector regarding the two JC Penney accounts (3032 and 9002) that are the
22   subject of this lawsuit, including the date, time, and substance of each communication . . . .";
     Plaintiff's Response to Interrogatory No. 7 (Plaintiff states that collection activity on the two JC
23   Penney accounts began "in or around April 2016 [but he claims in the sham declaration that his
     consent was revoked in 2015]); Plaintiff's Response to Interrogatory No. 8 (In response to
24   interrogatory asking when he received "the first collection call with regard to the two JC Penney
     accounts (3032 and 9002)" Plaintiff states that "collection activity [sic] on or around April of 2016.";
25   Plaintiff's response to interrogatory No. 13 ("[i]f you contend that at any point you revoked consent
     for Allied to call you on your cellular phone, state when you revoked consent, how you revoked
26   consent, and to whom you revoked consent." Plaintiff could identify no date or time; Plaintiff simply
     stated, "Plaintiff revoked with Synchrony Bank who employed Defendant to collect on its behalf.").
27   Plaintiff was asked multiple times during discovery when, specifically, he spoke with anyone
     regarding the two JC Penney accounts in question and when, specifically, he contended that he
28   revoked his consent. He was unable to offer any specific information on these points.

1   Evidentiary Objections, No. 1; *Yeager v. Bowlin*, 693 F.3d 1076, 1080-81 (9th Cir. 2012)

2   ("Several of our cases indicate that a district court may find a declaration to be a sham

3   when it contains facts that the affiant previously testified he could not remember.").

4       *Second*, Plaintiff relies on recorded phone calls in which a speaker tells a creditor

5   to stop calling. *See* Plaintiff's Ex. D. These calls are also entirely inadmissible because

6   they are unauthenticated. *See* Evidentiary Objections, No. 4. Plaintiff has offered no

7   evidence whatsoever authenticating these calls. In particular, there is no evidence

8   establishing where the calls came from, the date the calls occurred, who is speaking on

9   the calls, and why the calls are relevant. "A trial court can only consider admissible

10  evidence in ruling on a motion for summary judgment. [Citations omitted].

11  Authentication is a condition precedent to admissibility, and this condition is satisfied

12  by evidence sufficient to support a finding that the matter in question is what its

13  proponent claims. [Citation omitted]. We have repeatedly held that unauthenticated

14  documents cannot be considered in a motion for summary judgment. [Citations

15  omitted]." *Orr v. Bank of America, NT & SA*, 285 F.3d 764, 773 (9th Cir. 2002). The

16  calls are inadmissible for the additional reason that they constitute hearsay. *See* Fed. R.

17  Evid. §§ 801, 802.

18          **3.    Even if the Declaration and the Calls were Admissible, they**

19                 **Do not Establish a Revocation on the JC Penney Accounts.**

20      Even if Plaintiff's declaration is not stricken as a sham and paragraphs 2 and 3

21  are deemed admissible, the evidence presented still does not establish a revocation

22  with regard to the two JC Penney Accounts because all Plaintiff states is that "I

23  revoked consent to be called." Dec. of Mendoza, ¶ 2. This is a legal conclusion—not a

24  fact. Furthermore, there is no background information such as who he spoke with,

25  what was said, what the response was, and what the actual *context* of the call was. This

26  information is critical because it is undisputed that Plaintiff was being called by

27  multiple creditors on four other delinquent credit card accounts. His generalized

28  statement that "I revoked consent as to Synchrony" does not establish revocation as to

the JC Penney Accounts at issue. *See* AUF, No. 9; *Hudson v. Sharp Healthcare*, No. 13–CV–1807–MMA (NLS), 2014 WL 2892290 , at *7-8 (S.D. Cal. June 25, 2014) (analyzing revocation as to each particular account for which consent had previously been granted); *Gutierrez v. Barclays Group*, No. 10cv1012 DMS (BGS), 2011 WL 579238, at *3 (S.D. Cal. Feb. 9, 2011) (revocation should refer to the particular account in question); *Saunders v. NCO Fin. Sys., Inc.*, 910 F. Supp. 2d 464, 467-68 (E.D.N.Y. 2012) (revocation should include enough information to identify the account in question). *Cf. Jara v. GC Servs. Lim. Partnership*, 2:17-cv-04598-ODW-RAO, 2018 WL 2276635, at *4 (C.D. Cal. May 17, 2018) (triable issue on revocation where plaintiff had multiple accounts and plaintiff indicated to stop calling regarding her "accounts" and "debts").

Similarly, the two recordings, even if properly authenticated and admissible, do not establish a revocation as to the JC Penney Accounts because the speaker explicitly refers to other delinquent accounts (Paypal and Walmart), not JC Penney Accounts at issue here. *See* Dec. of Grammatico, Exs. D-E. Under *Van Patten*, revocation must be clearly expressed and must be "*based on the circumstance* in which the consumer gave his or her number." 847 F. 3d at 1040, 1048 (emphasis added) (cancelling an account without expressly demanding not be called or texted does not constitute revocation). Revocation as to the JC Penney Accounts could not possibly have been effectuated because the calls were not "based on the circumstance" in which Plaintiff granted consent to be called—they were related to entirely different accounts. Furthermore, the speaker does not offer any instruction other than "please do not call me." This cannot be construed as applying to the JC Penney Accounts because Plaintiff has admitted in discovery he did not engage in any communication with any debt collector (which would include Synchrony) regarding the JC Penney Accounts. AUF, No. 4. He also admitted that the collection calls on the JC Penney Accounts did not begin until several months after he claims he revoked. *Id*, No. 7. Accordingly, even if the recorded calls were admissible, it remains undisputed that Plaintiff did not revoke with regard to the JC Penney Accounts, the only accounts relevant to this case.

**B.    Plaintiff Could not Have Unilaterally Revoke Consent to be Contacted in Breach of an Express Term of a Contract.**

Even if there were evidence that Plaintiff revoked consent during a call (and there is not), Plaintiff's claim would still fail because consent cannot be revoked unilaterally when it is an express term of a bilateral contract. *See Reyes v. Lincoln Automotive Fin. Servs*, 861 F.3d 51, 55-58 (2nd Cir. 2017) ("[Plaintiff's] consent to be contacted by telephone, however, was not provided gratuitously; it was included as an express provision of a contract . . . under such circumstances, 'consent,' as that term is used in the TCPA, is not revocable."). In *Reyes*, the plaintiff listed his cellular phone number in his application to lease a new vehicle. *Id.* at 53-54. The lease contained a consent-to-call clause permitting defendant to call using "any telephone number you provide, now or in the future, including a number for a cellular phone or other wireless device[.]" *Id.* After plaintiff defaulted on the lease, defendant made multiple calls to plaintiff to plaintiff regarding the default. *Id.* The Second Circuit framed the issue as "whether the TCPA . . . permits a consumer to unilaterally revoke his or her consent to be contacted by telephone when the consent is given, *not gratuitously, but as a bargained-for consideration in a bilateral contract.*" *Id.* at 56 (emphasis added). This question was answered in the negative—allowing the plaintiff to unilaterally revoke his consent would contradict the common law of contracts, "[a]beset express statutory language to the contrary[.]" *Id.* at 58.

*Reyes* is the only Circuit court to squarely address this issue. In *Van Patten*, 847 F.3d 1037, 1047-48 the Ninth Circuit acknowledged that generally a plaintiff can revoke his consent under the TCPA and then held ultimately that the plaintiff's revocation under the facts of the case was ineffective. But *Van Patten* did not address the situation involved in *Reyes* and here—where consent is an express term of a bilateral contract. There is no indication in *Van Patten* that the consumer had agreed to a separate contractual clause providing consent-to-be-called by an auto-dialer (as the

Plaintiff did here). For this reason, the court analyzed revocation based on common law principles, but not contract principles.[3]

Several district courts in other Circuits have found *Reyes*' reasoning persuasive and elected to follow it. *E.g.*, *Barton v. Credit One Fin.*, No. 16CV2652, 2018 WL 2012876, at *3 (N.D. Ohio Apr. 30, 2018) (TCPA "'does not permit a consumer who agrees to be contacted by telephone as part of a bargained-for transaction to unilaterally revoke that consent.'") (quoting *Reyes*); *Medley v. Dish Network, LLC*, No. 8:16-cv-2534-T-36TBM, 2018 WL 4092120, at *10 (M.D. Fla. Aug. 27, 2018) ("Nothing in the TCPA indicates that contractually-granted consent can be unilaterally revoked in contradiction to black-letter law."); *Lucoff v. Navient Solutions, LLC*, No. 18-CIV-60743-RAR, 2019 WL 3773313, at *12 (S.D. Fla. Aug. 7, 2019) (plaintiff "could not unilaterally revoke his prior consent, which he gave as part of a bargained-for contract"), *appeal docketed*, No. 19-13482 (11th Cir. Sept. 6, 2019).

Here, just as in *Reyes*, Plaintiff entered into contracts with Synchrony when he opened the two JC Penney Accounts that contained consent-to-call provisions. *See* AUF, No's 1-3. In particular, Plaintiff agreed that, in exchange for his being afforded the opportunity to use the cards, that he could be contacted through "all channels of communication and for all purposes." *Id.* Having used the cards and derived the benefit of the credit provided to him, Plaintiff could not have unilaterally modified his contract to permit him to revoke his consent.

## C. Plaintiff's TCPA Claim is Barred because Allied Made the Calls in Good Faith.

It is well established in the Ninth Circuit that, under the FDCPA, a debt collector is entitled to rely in good faith upon information provided by a creditor with regard to collection activities. *Clark v. Capital Credit & Collection Services*, 460 F.3d 1162, 1174 (9th Cir. 2005). There is no duty imposed on a debt collector to independently

---

[3]     "Courts have given three main reasons for concluding that consumers may revoke their consent under the TCPA. First, such a holding is consistent with the common law principle that consent is revocable." *Van Patten*, 847 F.3d at 1047.

1    investigate an account that it receives from a creditor. *Id.* In the context of the TCPA,

2    "it would be incongruous that a debt collector be liable for acting where it had a good-

3    faith basis for doing so." *Chyba v. First Financial Asset Management, Inc.*, No. 12-cv-1721-

4    BEN (WVG), 2014 WL 1744136, at *11 (S.D. Cal. Apr. 30, 2014).

5        Here, it is undisputed that Plaintiff did, in fact, initially consent to receive calls

6    in connection with the JC Penney Accounts. UF, No.s 1-3. It is also undisputed that

7    Allied relied in good faith on Synchrony that it had consent to call make the collection

8    calls to Plaintiff. *See* AUF, No. 5. Plaintiff also admitted in discovery that he does not

9    have any evidence that Allied was aware of a revocation (*Id.*, No. 8), and Plaintiff has

10    presented no admissible evidence whatsoever that would suggest that Allied was aware

11    of any such revocation (because none exists). Because Allied proceeded to make the

12    calls to Plaintiff in good faith and was never instructed either by Plaintiff or anyone

13    else that a revocation had occurred, it should not be held liable under the TCPA.

14        **D.**     **Plaintiff's Evidence Fails to Establish that Allied Called Him with**

15            **an ATDS.**

16        TCPA requires that the calls in question be made using an automatic telephone

17    dialing system ("ATDS"). *See Herrick v. GoDaddy.com LLC*, 312 F.Supp.3d 792, 795 (D.

18    Ariz. 2018). An ATDS is defined as "'equipment which has the capacity (A) to store or

19    produce telephone numbers to be called, using a random or sequential number

20    generator; and (B) to dial such numbers.'" *Id.* (quoting 47 U.S.C. § 227(a)(1)). The

21    Ninth Circuit recently construed the language defining what constitutes an ATDS in

22    *Marks v. Crunch San Diego, LLC*, 904 F.3d 1041 (9th Cir. 2018). Based on *Marks*, a

23    device is an ATDS if it "has the capacity to—(1) to store numbers to be called or (2)

24    to produce numbers to be called, using a random or sequential number generator—

25    and to dial such numbers." *Id.* at 1052-53.

26        Here, in order to prevail on his motion, Plaintiff fails to establish that Allied

27    made the calls in question with an ATDS. Plaintiff spends much time elaborating on

28    the technical components of a system known as aQrate. *See* UF, No's 14-20. But

notably absent from this discussion are two critical points. *First*, Plaintiff does not establish that the relevant calls in question were made using the aQrate system; rather, Plaintiff establishes merely the general point that Allied has "utilized the aQrate phone system since November of 2013 to make outgoing phone calls." *Id.*, No. 14. The fact that Allied has used this system does not equate to the essential point that it used the system to make the particular calls at issue in this case. On that point alone, Plaintiff's motion must be denied. *Second*, equally as fatal, Plaintiff does not establish the first prong of the *Marks* test—that the aQrate system that was allegedly used stores numbers to be called or produces numbers to be called, using a random or sequential number generator. *See* UF, No's 14-20. Plaintiff offers no evidence on this point other than the testimony that aQrate works in conjunction with another "[r]ecord keeping application" (Qorus). *See* Allied's Response to UF, No. 18 in Statement of Genuine Disputes.

### E. Plaintiff's TCPA Claim is Barred by the One-Satisfaction Rule based on Plaintiff's Settlement with Synchrony.

The Ninth Circuit follows the one-satisfaction rule. "It is settled that . . . a plaintiff who has recovered any item of damage from one coconspirator may not again recover the same item from another conspirator; the law, that is, does not permit a plaintiff to recover a double payment." *Uthe Tech. Corp. v. Aetrium*, 808 F.3d 755, 760 (9th Cir. 2015) (quoting *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 401 U.S. 321, 348 (1971)). "In order to find a complete satisfaction under the one satisfaction rule, there must be such an identity between the injuries alleged and the remedies available that any additional recovery would unjustly enrich the plaintiff." *Uthe*, 808 F.3d at 760-61; *Seymour v. Summa Vista Cinema, Inc.*, 809 F.2d 1385, 1389 (9th Cir. 1987) (a tort victim is entitled to "one complete satisfaction of his claim, neither more nor less.").

Here, Plaintiff's claims, remedies, and alleged injuries against Allied are *the same* as what he asserted and recovered for against Synchrony; Plaintiff already recovered against Synchrony for Allied's calls (which were made on behalf of Synchrony as

Synchrony's agent). The claims against Allied were previously resolved in a settlement agreement in which Plaintiff was paid $22,016.62 and given credits of $1,043.52 and $2,822.53 on the two subject JC Penney Accounts. AUF, No. 10. In particular, Plaintiff's claims against Synchrony are based on allegations that Synchrony called him "almost every day" from November 19, 2015, through June 6, 2016. *See* Allied's Response to UF, No. 28 in Statement of Genuine Disputes. Similarly, Plaintiff's claims against Allied are based on allegations that Allied called him "almost every day" between April 22, 2016, and June 6, 2016—in other words, Plaintiff's claims against Synchrony, which he settled, *encompassed* the same calls for which he now seeks a double-recovery from Allied.[4] The TCPA allegations against Allied and Synchrony beginning on page 5 of the Complaint are *exactly* the same; Plaintiff does not distinguish between the two defendants, nor can he, because the claims against Synchrony *included* the same pool of calls and same alleged injuries as those against Allied. *See id.*

The fact that these claims and alleged damages are entirely indistinguishable is further confirmed by the settlement agreement itself. The Recitals section states that the "Parties intend to fully and completely settle all claims . . . that were or could have been brought by Claimant in the Litigation[]." *Id.* Litigation in the settlement agreement with Synchrony is defined to include, without limitation, "Central District of California (C.D. Cal.), Case No. 8:17-cv-00885" (the current action). *Id.* This is a description of *all* of the claims in this lawsuit, not just the ones that allegedly apply only to Synchrony. "The essential requirement for the 'one satisfaction rule' is that the amounts recovered by settlement and the judgment represent common damages arising from a single, indivisible harm." *Chisholm v. UHP Projects, Inc.*, 205 F.3d 731, 737 (4th Cir. 2000). It is true that the settlement agreement purports to carve Allied out of

---

[4]     Under the TCPA, Synchrony is vicariously liable for the calls Allied made on its behalf. *See Gomez v. Campbell-Edwald Co.*, 768 F.3d 871, 877 (9th Cir. 2014) (vicarious liability exists under TCPA where agency relationship is established by federal common law). It is undisputed that Allied acted as the agent of Synchrony with regard to the collection calls on the two subject JC Penney Accounts. *See* UF, No.'s 7-8.

the release; but the critical point here is not what Plaintiff's intention was with regard to Allied in the scope of the release; rather, it is that Synchrony was equally responsible for all of the calls made by Allied, the liability regarding the pool of calls made by Allied is indistinguishable, and Plaintiff already obtained satisfaction from Synchrony. Here, there is a single, indivisible alleged harm—the pool of collection calls on the two JC Penney accounts made by Allied. Plaintiff has already been fully compensated for these calls and he is not entitled to a double-recovery.

F.   **Plaintiff's Argument for Treble Damages is Frivolous based on the Fact that Plaintiff Admitted He has No Evidence that Allied was Aware of a Revocation.**

Plaintiff is seeking treble statutory damages against Allied pursuant to 47 U.S.C. § 227(b)(3). In order for Plaintiff to be entitled to treble damages, he must demonstrate that Allied "knowingly or willfully" violated the TCPA. *Id.*; *see Olney v. Progressive Cas. Ins. Company*, 993 F. Supp. 2d 1220, 1227 (S.D. Cal. 2014) (defendant acted willfully or knowingly when it placed automated calls to the plaintiff's telephone number after the plaintiff advised defendant that it was calling the wrong person).

As established throughout this opposition, Plaintiff admitted in discovery that he does not have any evidence that Allied was aware of a revocation with regard to the JC Penney Accounts. AUF, No. 8. At the risk of restating the obvious, this renders any argument regarding willfulness frivolous. If that point were not enough, Plaintiff has also admitted that he never even spoke with any debt collector regarding the two JC Penney Accounts in question. *Id.*, No. 4. Plaintiff would apparently prefer that he could have a "do-over" on the written discovery he submitted, but he cannot and, thus, he has no claim for treble damages under the TCPA (or any damages).

## V.   CONCLUSION.

Allied made calls to Plaintiff, with his contractual consent, in a valid attempt to collect on two delinquent credit card accounts. Allied never reached Plaintiff, Plaintiff never spoke to any debt collector about the two JC Penney Accounts in

question, and Plaintiff never revoked consent either to Allied or anyone else. All of these facts were admitted by Plaintiff in discovery. Accordingly, Plaintiff should receive no additional payout for defaulting on six credit cards. His motion for partial summary judgment should be denied and the Court should enter summary judgment in favor of Allied.

Dated:  September 30, 2019        **KATTEN MUCHIN ROSENMAN LLP**
Gregory S. Korman
Paul A. Grammatico


By: _____/s/Paul A. Grammatico_____
     Attorneys    for    defendant,    Allied
Interstate, LLC

16

## CERTIFICATE OF SERVICE
*Henry Mendoza v. Allied Interstate, LLC and Synchrony Bank*
Case No: 8:17-cv-00885-JVS-KES

STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

     I am a resident of the State of California, over the age of eighteen years, and not a party to the within action.  My business address is Katten Muchin Rosenman LLP, 515 S. Flower Street, Suite 1000, Los Angeles, CA 90071.  On September 30, 2019, I served the foregoing documents described as:

### ALLIED INTERSTATE, LLC'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

| | |
|---|---|
| **X** | I electronically filed the foregoing document using the CM/ECF system which automatically sends notification of such filing to all counsel of record and or parties in this case. |
| | BY ELECTRONIC MAIL.   A PDF copy of the foregoing document was transmitted on this date via electronic mail to the address(es) listed below:<br>tegan@pricelawgroup.com<br>alla@pricelawgroup.com<br>prosen@jamsadr.com<br>ewu@jamsadr.com |
| | BY U.S. MAIL.   I am readily familiar with the firm's practice of collecting and processing correspondence for mailing. Under that practice, it would be deposited with the U.S. Postal Service on the same day with postage thereon fully prepaid at Los Angeles, California in the ordinary course of business to the address listed below:<br><br>Lauren Tegan Rodkey           Alla Gulchina, Esq.<br>Price Law Group APC        Price Law Group, APC<br>6345 Balboa Boulevard Suite 247  86 Hudson Street<br>Encino, CA 91316             Hoboken, NJ 07030<br>818-600-5526                T: (818) 600-5566<br>Fax: 818-600-5426           F: (818) 600-5466 |

     I declare that I am employed in the office of a member of the bar of this Court and whose direction the service was made.

     Executed on September 30, 2019, at Los Angeles, California.

_____
Lora Anderson