Brian Brazier, Esq. (SBN: 245004)
**PRICE LAW GROUP, APC**
8245 North 85th Way
Scottsdale, AZ 85258
T: (818) 600-5587
F: (818) 600-5464
E: brian@pricelawgroup.com

Lauren Tegan Rodkey, Esq. (SBN: 275830)
**PRICE LAW GROUP, APC**
6345 Balboa Blvd, Suite 247
Encino, CA 91316
T: (818) 600-5526
F: (818) 600-5426
E: tegan@pricelawgroup.com

Alla Gulchina, Esq., NJ #003732010
Admitted *pro hac vice*
**PRICE LAW GROUP, APC**
86 Hudson Street
Hoboken, NJ 07030
T: (818) 600-5566
E: alla@pricelawgroup.com
*Attorneys for Plaintiff,*
*Henry Mendoza*

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
## SOUTHERN DIVISION

|  |  |
|---|---|
| HENRY MENDOZA,<br><br>    Plaintiff,<br><br>vs.<br><br><br>Allied INTERSTATE, LLC<br><br>    Defendant. | **Case No. 8:17-CV-00885-JVS-KES**<br><br>**PLAINTIFF'S REPLY TO DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT**<br><br>Complaint Filed: May 19, 2017<br>Trial Date: December 10, 2019<br><br>Date: October 21, 2019<br>Time: 1:30 p.m.<br>Place: Courtroom 10C<br>Hon. Judge James V. Selna<br>Hon. Magistrate Judge Karen E. Scott |

**TABLE OF AUTHORITIES**

**Cases**

*ACA Int'l v. FCC,* 885 F.3d 687, 692 (D.C. Cir. 2018). ................................. - 16 -

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). ......................... - 7 -

*Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) .................................... - 6 -

*Chyba v. First Financial Asset Mgmt., Inc.,* No. 12-cv-1721-BEN (WVG), 2014 WL
   1744136 (S.D. Cal. Apr. 30, 2014). ........................................................ - 20 -

*Gager v. Dell Financial Services, LLC*, 727 F.3d 265 (3d. Cir. 2013) ........................ - 16 -

*Gutierrez v. Barclays Grp.*, No. 10cv1012 DMS (BGS), 2011 U.S. Dist. LEXIS 12546, at
   *9 (S.D. Cal. Feb. 9, 2011) ................................................................. - 12 -

*Haysbert v. Navient Solutions, Inc.,* 15-4144 PSG (ex), 2016 WL 890297, at *10 (C.D.
   Cal. March 8, 2016) .......................................................................... - 18 -

*Herrera v. First Nat'l Bank of Omaha, N.A.,* No. 2:17-cv-01136-RSWL-SKA, 2017 WL
   6001718, at *3 (C.D. Cal. Dec. 4, 2017) .................................................... - 17 -

*Hudson v. Sharp Healthcare*, No. 13-CV-1807-MMA (NLS), 2014 U.S. Dist. LEXIS
   87184, at *21-27 (S.D. Cal. June 25, 2014) ................................................ - 12 -

*J2 Glob. Communs., Inc. v. Blue Jay, Inc.*, No. C-08-4254 PJH (EMC), 2009 U.S. Dist.
   LEXIS 111609, at *21 (N.D. Cal. Aug. 4, 2009) ............................................ - 18 -

*Jara v. GC Servs. Ltd. P'ship,* No. 2:17-cv-04598-ODW-RAO, 2018 WL 2276635, at *3
   (C.D. Cal. May 17, 2018). .................................................................. - 17 -

*Jara v. GC Servs.*, No. 2:17-cv-04598-ODW-RAO, 2018 U.S. Dist. LEXIS 83522, at *8
   (C.D. Cal. May 17, 2018) .................................................................. - 12 -

*Lamkin v. Portfolio Recovery Services, LLC,* 18-03071-WBS, 11 (E.D. Cal. Sept. 25,
   2019) ....................................................................................... - 18 -

*Marks v. Crunch San Diego, LLC*, 904 F.3d 1041, 1052 (9th Cir. 2018) ........................ - 8 -

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) ............. - 7 -

*Morse v. Allied Interstate, LLC*, 65 F. Supp. 3d 407 (M.D.Pa. Dec. 10, 2014) ........... - 10 -

*Olney v. Progressive Cas. Ins. Co.*, 993 F. Supp. 2d 1220, 2014 WL 294498, *7 (S.D. Cal. Jan. 24, 2014) ..................................................................................... - 19 -

*Reardon v. Uber Technologies, Inc.*, 115 F.Supp.3d 1090, 1102 (N.D. Cal., 2015) ... - 16 -

*Reyes v. Lincoln Automotive Fin. Servs. 861 F.3d 51 (2d. Cir. 2017).* ........................ - 15 -

*Royland v. ALG Real Estate Services, Inc.,* 5:14-02445-PSG, 2015 WL 1522244, at *11 (N.D. Cal. March 16, 2015) ..................................................................... - 18 -

*Sapan v. Auth. Tax Servs., Ltd. Liab. Co.*, No. 13cv2782 JAH (JLB), 2014 U.S. Dist. LEXIS 196025, at *6-7 (S.D. Cal. July 8, 2014) ..................................... - 19 -

*Self-Forbes v. Advanced Call Ctr. Techs., LLC,* No. 17-15804, 2018 WL 5414613 at *2 (9th Cir. Oct. 29, 2018) ................................................................... - 17 -

*Singer v. Las Vegas Athletic Clubs,* 376 F.Supp.3d 1062, 1073 (D. Nev. Mar. 25, 2019) ..- 17 -

*Uthe Tech. Corp. v. Aetrium, Inc.*, 808 F.3d 755, 760 (9th Cir. 2015) ........................ - 21 -

*Van Patten v. Vertical Fitness Group, LLC,,* 847 F.3d 1037, 1047 (9th Cir. 2017) ..... - 17 -

*Zondlo v. Allied Interstate, LLC,* 290 F. Supp. 3d 296 M.D. Pa. Feb. 12, 2018) ............- 10

**Statutes**

47 U.S.C. § 227(a)(1) ..................................................................................... - 7 -

**Rules**

Fed. R. Civ. P. 56(c) ..................................................................................... - 6 -

**Regulations**

*In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 199,* 30 FCC Rcd 7961 para. 69 (2015) ................................................................. - 16 -

*In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991,* 27 FCC Rcd 1830 (2012) ................................................................. - 16 -

*In re the Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991,* 18 FCC Rcd. 14014, 14017 (2003) ................................................................. - 8 -

*In re the Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991,* 18 FCC Rcd. 14014, 14017 (2003). ................................................................. - 8 -

## TABLE OF CONTENTS

I.   INTRODUCTION ................................................................. - 6 -

II.  STATEMENT OF FACTS..................................................... - 6 -

III. LEGAL STANDARD .......................................................... - 6 -

IV.  ARGUMENT...................................................................... - 7 -

   A.   DEFENDANT VIOLATED THE TCPA ........................... - 7 -

   B.   DEFENDANT USED AN AUTOMATIC TELEPHONE DIALING SYSTEM TO CONTACT PLAINTIFF AFTER PLAINTIFF REVOKED CONSENT TO BE CALLED ...................................................... - 7 -

   C.   PLAINTIFF TWICE EFFECTIVELY REVOKED CONSENT TO BE CONTACTED ON NOVEMBER 19, 2015....................... - 10 -

   D.   AS A MATTER OF LAW PLAINTIFF IS ALLOWED TO REVOKE PRIOR EXPRESS CONSENT ........................................... - 14 -

   E.   DEFENDANT KNOWINGLY AND/OR WILLINGLY VIOLATED THE TCPA BY CONTINUING TO CALL PLAINTIFF AFTER HE EFFECTIVELY REVOKED CONSENT TO BE CALLED ....................... - 16 -

   F.   THE ONE SATISFACTION RULE DOES NOT APPLY TO PROTECT DEFEDANT THROUGH PLAINTIFF'S SETTLEMENT WITH SYNCHRONY BANK ....................................................... - 18 -

V.   CONCLUSION .................................................................. - 21 -

## I.   INTRODUCTION

Plaintiff refers to the Introduction previously presented in Plaintiff's Notice of Motion and Motion for Partial Summary Judgment.  *See* Doc. 53.

## II.   STATEMENT OF FACTS

Plaintiff refers to the Statement of Facts previously presented in Plaintiff's Notice of Motion and Motion for Partial Summary Judgment.  *See* Doc. 53.

## III.   LEGAL STANDARD

Summary judgment is appropriate where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). On a motion for summary judgment, the moving party bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the record that establish the absence of a material issue of fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  In determining whether summary judgment is appropriate, a court must resolve all ambiguities and draw all reasonable inferences against the moving party.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). Summary judgment is appropriate in favor of Plaintiff because there are no material issues of fact as presented by the Plaintiff in this Motion.

# IV.    ARGUMENT

## A. **DEFENDANT VIOLATED THE TCPA**

To prevail on his TCPA claim, Plaintiff must show that 1) the Defendant called his cellular phone, 2) using an automatic telephone dialing system ("ATDS"), 3) without his consent. In the instant case, Defendant called Plaintiff's cellular phone over three hundred and fifty times using an ATDS without his express consent to contact him.

## B. **DEFENDANT USED AN AUTOMATIC TELEPHONE DIALING SYSTEM TO CONTACT PLAINTIFF AFTER PLAINTIFF REVOKED CONSENT TO BE CALLED**

The TCPA defines an "automatic telephone dialing system" as "equipment that has the capacity — (A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." 47 U.S.C. § 227(a)(1). The TCPA does not define the term "capacity." The FCC, which Congress vested with authority to prescribe regulations implementing the TCPA's requirements, has interpreted an ATDS as "cover[ing] any equipment that has the specified capacity to generate numbers and dial them without human intervention, regardless of whether the numbers called are randomly or sequentially generated or come from calling lists." *In re the Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 FCC Rcd. 14014, 14017 (2003).

The Ninth Circuit recently analyzed the statutory definition of an ATDS by holding that the definition of an ATDS is "equipment which has the capacity- (1) to store numbers to be called **or** (2) to produce numbers to be called, using a random or sequential number generator- and to dial such numbers automatically (even if the system must be turned on

or triggered by a person.)" *Marks v. Crunch San Diego, LLC*, 904 F.3d 1041, 1052 (9th Cir. 2018) (emphasis added). Under the 9th Circuit's precedent in *Marks* there is no dispute that Defendant's system is an ATDS.

Defendant's argument that Plaintiff did not provide evidence to prove that it uses an ATDS is baseless. First, Defendant admitted that it has used, at least since November 2013, the aQrate phone system to make outgoing calls. *See* Doc. 53-1, Plaintiff's Local Rule 56-1 Statement of Uncontroverted Facts and Conclusions of Law in Support of Plaintiff's Motion for Partial Summary Judgment ("SUFC"), at ¶ 14. Second, there is no dispute that all of the calls made by Defendant to Plaintiff were made after April 2016, and that all of those calls were outgoing. *Id. at* ¶¶ 8-9; Doc. 53-3, Allied Bates No. 000006-8, 0000086-90. Not only has Plaintiff has provided enough evidence to support that Defendant used aQrate to call Plaintiff, Defendant admitted to such a fact in its response to Plaintiff's interrogatories. Upon being asked to "[l]ist the make, model, and serial number for the telephone system(s) used to contact Plaintiff between April 1, 2016 and July 1, 2016", Defendant responded by stating "Defendant called Plaintiff with regard to the two JC Penney/Synchrony Bank accounts using the aQrate dialer". The response also referred to a copy of the aQrate telephone manual Bates-stamped Allied 00096-151. Declaration of Alla Gulchina, Ex. B, page 3.

Defendant improperly argues that Plaintiff did not establish the first element of the *Marks* standard by not providing sufficient evidence that the aQrate system stores numbers to be called. Doc. 56, page 13. First, Plaintiff's evidence to support this contention is corroborated through the deposition of Defendant's corporate representative, Sergey

Kolosovskiy. Mr. Kolosovskiy testified that the aQrate system runs 24 hours per day, 7 days a week with the capacity to make as many as 50,000 outgoing calls per day. SUFC at ¶ 36.  The agent has no control over who he/she calls and instead the calls are randomly assigned to the agent by aQrate's software from an existing call list. *Id.* at ¶¶ 17-18. Defendant's phone system operates in two different dialing modes, predictive and preview. *Id*. at ¶¶ 15-16. Under both dialing modes, aQrate dials all telephone numbers. *Id*. at ¶¶ 15-17. The lists or campaigns from which the telephone numbers are dialed are also created by Defendant's telephony system. *Id.* at ¶¶ 18-19. The aQrate phone system works in conjunction with the Qorus database. *Id.* at ¶ 18. The Qorus database creates lists of clients for aQrate to dial. *Id*. Qorus automatically generates phone lists for aQrate based on campaigns set by Defendant. *Id.* at ¶ 19.  The issue of whether the Defendant's telephony system employs a dialer that dials numbers from a stored list of telephone numbers is undisputed.

Rather it is Defendant who offers no evidence to counter Plaintiff's argument on this issue. Instead, in its response to Plaintiff's Uncontroverted Facts, Defendant just disputes the facts without offering any contrary evidence. Doc. 56-3, Defendant's Statement of Genuine Disputes ("SGD"), ¶¶ 15, 17-20. They cannot offer any contrary evidence because no such evidence exists.

Furthermore, numerous other courts have already found that this very system used by Defendant is in fact an ATDS. *See Morse v. Allied Interstate, LLC*, 65 F. Supp. 3d 407 (M.D.Pa. Dec. 10, 2014) ("[D]efendant's system cannot in its current state randomly or sequentially generate telephone numbers. But, the system has the capacity to store and

dial random and sequential numbers if provided with a list of such numbers which is uploaded into a mapping field specifically designed to receive such a list."); *see also Zondlo v. Allied Interstate, LLC,* 290 F. Supp. 3d 296 M.D. Pa. Feb. 12, 2018) (Because the same issue was litigated in *Morse* and "[t]he parties agree that there have not been any 'material' or 'major' changes to the dialing software since *Morse*" the issue of ATDS will not be litigated.).

Pursuant to the *Marks* standard, Defendant's aQrate system is clearly an ATDS. The basic function of an ATDS is to dial numbers from a stored list without the need for human intervention. Therefore, the Court must grant the Motion for Partial Summary Judgment on this issue.

## C. **PLAINTIFF TWICE EFFECTIVELY REVOKED CONSENT TO BE CONTACTED ON NOVEMBER 19, 2015**

The Court should grant Plaintiff's Motion for Partial Summary Judgment because Plaintiff effectively revoked consent to be called, and after his revocation, the Defendant continued its bombardment of calls to Plaintiff's cell phone using an ATDS.

Plaintiff acknowledges that he gave Synchrony Bank his cellular phone number when he applied for the JC Penney accounts, ending in 3032 and 9002. SUFC at ¶¶ 2, 4. In order to call Plaintiff with the aQrate system, Defendant relies on the consent Plaintiff provided to Synchrony Bank. *See* Doc. 56, pages 5-6.  Therefore, when Plaintiff revoked consent for Synchrony to call him, that revocation applies to future callers.  *See* Doc. 53., pages 18-19.

It is further undisputed that on November 19, 2015, during two incoming calls from Synchrony Bank, Plaintiff clearly and unambiguously revoked consent. SUFC at ¶ 6. At the time of the November 19, 2015 calls, Synchrony was collecting on Plaintiff's Walmart, PayPal, JC Penney x3032, and JC Penney x9002 accounts. *Id.* at ¶ 5. When Plaintiff revoked consent, Synchrony properly notated Plaintiff's telephone number to be dialed manually. *Id.* at ¶¶ 23-26. Defendant does not dispute the revocations but attempts to create new law by asserting that Plaintiff's two requests not to be called did not extend to his JC Penney accounts and only applied to the specific account Synchrony was calling on.  Defendant cites no authority that stands for this proposition but attempts to rely on inapposite authority. *Hudson, Guiterrez* and *Jara* generally required account specific revocation because the facts involved two separate parties with two distinct individuals regarding two distinct accounts. *Hudson v. Sharp Healthcare*, No. 13-CV-1807-MMA (NLS), 2014 U.S. Dist. LEXIS 87184, at *21-27 (S.D. Cal. June 25, 2014) (analyzing revocation of consent for a parent and her child's account separately where defendant placed different calls for each account); *Gutierrez v. Barclays Grp.*, No. 10cv1012 DMS (BGS), 2011 U.S. Dist. LEXIS 12546, at *9 (S.D. Cal. Feb. 9, 2011) (a husband and wife individually revoked because they were both receiving collection calls on their personal cellular phone numbers); *Jara v. GC Servs.*, No. 2:17-cv-04598-ODW-RAO, 2018 U.S. Dist. LEXIS 83522, at *8 (C.D. Cal. May 17, 2018) (court found a material issue of fact as to whether one plaintiff's revocation extended to multiple accounts including her husband's account listed under her contact number).  To further distinguish the instant case from *Jara* and *Hudson,* in those two cases there was no revocation at all by the

separate debtor, let alone for the account at issue. *Jara,* 2018 U.S. Dist. LEXIS 83522 at *11; *Hudson,* 2011 U.S. Dist. LEXIS 12546 at *23-26 (no revocation where plaintiff had a "mutual agreement" with defendant to still be contacted on her phone on a restricted basis). The relied upon authority is so factually different from the instant case, it cannot reasonably be considered.

Moreover, Plaintiff has provided evidence that Synchrony treated Plaintiff's requests to cease calls as valid revocation of consent when it marked Plaintiff's cell phone number to be dialed manually. SUFC at ¶ 23-26. Per Synchrony Financial Supplier Business Requirements ("Synchrony Scrub Policy") dated March 7, 2016, **one month before** the first account was assigned to Defendant, mobile phone numbers with an "X" notation should be dialed manually. *Id.* at ¶ 25. (emphasis added). Similarly, the policy provides that all non-consent accounts will have a "U" notation which indicates that the account should be worked manually. *Id.* at ¶ 23. It is undisputed that Plaintiff's cell phone number was marked with a "U" and "X" notation on several pages of Synchrony Bank's account notes. *Id.*t at ¶¶ 24, 26; Gulchina Dec., Ex. D. These notes, while not compiled by Defendant, were disclosed by Defendant through discovery and Defendant was bound to comply with the policy when collecting on Defendant's accounts. *Id.* The Synchrony policy is therefore a business record of Defendant, turned over by Defendant and therefore is admissible at trial. The cover page of the Synchrony Scrub Policy indicates that **all** of its clients are impacted by the policy. *Id.* at ¶ 22; Gulchina Dec., Ex. C, Allied Bates No. 000155. (emphasis added). Defendant disputes that it is not bound by the Synchrony scrub policy, however, in response to Plaintiff's Interrogatory No. 3, "Describe and explain any

and all procedures, policies rules and/or guidelines used by you in order to prevent violations of the TCPA", Defendant referred to Bates-stamped Allied 000152-158 documents which contain the Synchrony Scrub Policy. Gulchina Dec., Ex. B, page 3.

Defendant attempts to contradict Synchrony Scrub Policy and the accompanying FDR notes by claiming that it was improperly authenticated, no testimony exists to support the documents and therefore it is inadmissible. SGD at ¶ 22; Doc 56-2, Defendant's Evidentiary Objections to Plaintiff's Motion for Partial Summary Judgment, ¶ 5. Defendant's objections are also meritless and made in bad faith. The target of Defendant's evidentiary objections are documents that were turned over and bates stamped by Defendant. In the Notice of Deposition, Plaintiff required Defendant to produce a deponent who has knowledge and must be able to testify to "(2) Documents produced within the case and all documents requested by the parties in discovery", among other topics. During the subsequent deposition, Defendant's corporate representative, Mr. Kolosovskiy, testified that he had never seen the FDR Notes and the Synchrony Scrub policy, thus rendering him unable to answer substantive questions about the documents. Doc. 53-4, pages 72:21-75:1, 78:7-79:5, 106:22-108:6. Thereafter, the parties stipulated to conducting a second deposition to address the topics Mr. Kolosovskiy could not testify to, including but not limited to: Synchrony Scrub Policy and it's FDR notes. *See* Doc. 51. The second deponent, Michael Mullins, also lacked the requisite knowledge to adequately discuss the records. Gulchina Dec., Ex. E.  As discussed above, the documents are business records kept in the normal course of business by Defendant, turned over by Defendant in response to Plaintiff's request for "its" policies and procedures, and therefore

fall within applicable exceptions to the hearsay objection.   Through Defendant's interrogatory responses, Defendant has admitted that the policies apply to Defendant's collections practices.

### D.  AS A MATTER OF LAW PLAINTIFF IS ALLOWED TO REVOKE PRIOR EXPRESS CONSENT

Defendant's argument that Plaintiff could not have unilaterally revoked consent is simply in direct contradiction to binding law. Defendant knows this because they cite to non-binding authority in support of this argument, mainly *Reyes v. Lincoln Automotive Fin. Servs. 861 F.3d 51 (2d. Cir. 2017).* "[This] Court is bound by the Ninth Circuit's ruling in *Van Patten*. To the extent *Reyes* may serve as persuasive authority, the Court finds it cannot be reconciled with *Van Patten*, *ACA Int'l*, or the 2015 FCC Order." *Singer*, 376 F.Supp. 3d. at 1073. "First, the 2015 FCC Order states that 'callers may not abridge a consumer's right to revoke consent using any reasonable method.'" 30 FCC Rcd. at 7996. ('[C]onsumers must be able to respond to an unwanted call – using either a reasonable oral method or a reasonable method in writing- to prevent future calls.')". The D.C. Circuit subsequently endorsed the '[FCCs] approach to revocation of consent, under which a party may revoke her consent through any reasonable means clearly expressing a desire to receive no further messages from the caller'." *Id.* citing *ACA   Int'l v.   FCC,* 885 F.3d 687, 692(D.C. Cir. 2018).

In October of 2013, the FCC required that telemarketers obtain prior express written consent to contact consumers using an ATDS. *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991,* 27 FCC Rcd. 1830 (2012).

Following this edict, the FCC has repeatedly and clearly stated that consent can be revoked by any reasonable means, including orally. *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 199,* 30 FCC Rcd 7961 para. 69 (2015).

In its 2015 order, the FCC highlighted many decisions supporting its view that oral revocation was reasonable under the statute.  The FCC stated that "Several appellate and district courts have held that consent under the TCPA can be revoked, and that [communications] sent after consent is revoked violate the TCPA." *Reardon v. Uber Technologies, Inc.*, 115 F.Supp.3d 1090, 1102 (N.D. Cal., 2015); *See also*, *Gager v. Dell Financial Services, LLC*, 727 F.3d 265 (3d. Cir. 2013) (the court held that "the TCPA allows consumers to revoke their prior express consent" and that it "is consistent with the basic common law principle that consent is revocable.");  *Gutierrez v. Barclays Grp.*, Case No. 10CV1012 DMS BGS, 2011 WL 579238, at *4 (S.D.Cal. Feb. 9, 2011). The 2015 FCC Order makes clear "that consumers may revoke consent through any reasonable means, either orally or in writing. *Reardon*, 115 F.Supp.3d 1092 (See 2015 FCC Order, ¶¶ 55, 64.)  "Ninth Circuit courts, applying *Van Patten,* have held that prior express written consent, even if obtained through a contract between the parties, does not preclude a party from revoking consent." *Singer v. Las Vegas Athletic Clubs,* 376 F.Supp.3d 1062, 1073 (D. Nev. Mar. 25, 2019) (*See, e.g., Self-Forbes v. Advanced Call Ctr. Techs., LLC,* No. 17-15804, 2018 WL 5414613 at *2 (9th Cir. Oct. 29, 2018) (reversing grant of summary judgment in the defendant's favor on consent revocation notwithstanding the plaintiff's prior consent to be called under the terms of her credit card application); *Herrera v. First Nat'l Bank of Omaha, N.A.,* No. 2:17-cv-01136-

RSWL-SKA, 2017 WL 6001718, at *3 (C.D. Cal. Dec. 4, 2017); *Jara v. GC Servs. Ltd. P'ship,* No. 2:17-cv-04598-ODW-RAO, 2018 WL 2276635, at *3 (C.D. Cal. May 17, 2018). "Consumers may revoke their consent, orally or in writing, to be contacted under the TCPA, but '[r]evocation of consent must be clearly made and [the consumer] must express a desire not to be called . . .'" *Singer*, 376 F.Supp.3d at 1074; citing *Van Patten v. Vertical Fitness Group, LLC,,* 847 F.3d 1037, 1047 (9th Cir. 2017).

There is no factual dispute in this matter that Plaintiff revoked any prior express consent to be called with Synchrony Bank. On November 19, 2015, in two separate conversations with Synchrony Bank, Plaintiff clearly and unequivocally stated that he did not want to be called again. SUFC at ¶ 6. Thereafter, Defendant called him three hundred and fifty-one (351) times. Doc. 53-3.

Therefore, it is undisputed that Plaintiff clearly and unequivocally requested that he no longer be called. Therefore, the Court must grant the Motion for Partial Summary Judgment on this issue.

### E.  DEFENDANT KNOWINGLY AND/OR WILLINGLY VIOLATED THE TCPA BY CONTINUING TO CALL PLAINTIFF AFTER HE EFFECTIVELY REVOKED CONSENT TO BE CALLED

In order to recover treble damages for a willful and knowing violation of the TCPA, Plaintiff does not have to prove that he revoked with Defendant directly. In fact, "Plaintiff need not show that defendant knew his conduct would violate the TCPA" as "the threshold to assess treble damages is 'low'". *Lamkin v. Portfolio Recovery Services, LLC,* 18-03071-WBS, 11 (E.D. Cal. Sept. 25, 2019) (citing *Haysbert v. Navient Solutions, Inc.,* 15-4144 PSG (ex), 2016 WL 890297, at *10 (C.D. Cal. March 8, 2016);

*Royland v. ALG Real Estate Services, Inc.,* 5:14-02445-PSG, 2015 WL 1522244, at *11 (N.D. Cal. March 16, 2015)). "The Court need not decide in the instant case whether knowledge of the law is required before a treble damages award may be made under the TCPA." *J2 Glob. Communs., Inc. v. Blue Jay, Inc.*, No. C-08-4254 PJH (EMC), 2009 U.S. Dist. LEXIS 111609, at *21 (N.D. Cal. Aug. 4, 2009). Either knowingly violating the TCPA or "simply knowingly sending an unsolicited communication" is enough to award treble damages. *Id.* at *21. Morever, "Defendant knowingly or willfully violates the TCPA where Plaintiff notifies Defendant to stop calling and Defendant disregards the request." *Sapan v. Auth. Tax Servs., Ltd. Liab. Co.*, No. 13cv2782 JAH (JLB), 2014 U.S. Dist. LEXIS 196025, at *6-7 (S.D. Cal. July 8, 2014); *See Olney v. Progressive Cas. Ins. Co.*, 993 F. Supp. 2d 1220, 2014 WL 294498, *7 (S.D. Cal. Jan. 24, 2014).

As previously briefed, there is no dispute that Defendant called Plaintiff from April through June 2016. It is also undisputed that Plaintiff did not give Allied his cell phone number and Allied obtained Plaintiff's telephone number from Synchrony Bank. The facts, supported by two recordings disclosed by Defendant, prove that Plaintiff revoked consent to be called from Synchrony Bank. There is no evidence that Defendant ever investigated whether or not it has permission to contact Plaintiff using an ATDS.  In fact, the unrefuted evidence establishes that the records turned over by Synchrony Bank to Defendant clearly indicated that all calls to Plaintiff must be dialed manually.  Finally, there is no dispute that all the calls made by Defendant to Plaintiff were after he revoked consent to be called. Defendant willfully disregarded the scrub policy and the accompany notations on Plaintiff's cellular phone number and continued to bombard him with calls.

After Plaintiff's account was placed with Defendant by Synchrony, there were daily communications made with Synchrony about it. Gulchina Decl., Exhibit E, 56:22- 57:7. Defendant has offered no explanation or evidence how it determined it had consent to contact Plaintiff. Here, no reasonable trier of fact could find that Defendant's conduct was anything but willful.

Finally, Defendant makes an unfounded argument that Plaintiff's claim is barred because Defendant acted in good faith. In support of this, it cites to authority referring to the standard of reliance of information between a debt collector and creditor as it refers to the Fair Debt Collection Practices Act, not the TCPA. Even then, the *Chyba* case allowed for total reliance on creditor information in the context of verification of debt therefore the reliance is limited and not boundless as the Defendant would have this Court believe. Defendant then makes the unsupported conclusion that the same limited standard applies to the TCPA. There is no authority to suggest such an argument. *Chyba v. First Financial Asset Mgmt., Inc.,* No. 12-cv-1721-BEN (WVG), 2014 WL 1744136 (S.D. Cal. Apr. 30, 2014).

**F.  THE ONE SATISFACTION RULE DOES NOT APPLY TO PROTECT DEFEDANT THROUGH PLAINTIFF'S SETTLEMENT WITH SYNCHRONY BANK**

Defendant would like to shield its liability by taking advantage of a prior settlement it was not a party to and expressly excluded from. Defendant dusts off the tort theory regarding the "one-satisfaction rule" in a desperate "Hail Mary" attempt to evade liability.  This rule derives from the common law regarding **joint tortfeasors and a**

**single indivisible wrong** and provides that that "payment made by a joint tortfeasor diminishes the claim against the remaining tortfeasors." *Uthe Tech. Corp. v. Aetrium, Inc.*, 808 F.3d 755, 760 (9th Cir. 2015) (refusing to apply the one-satisfaction rule in a case concerning RICO claims settled partially in a prior Singapore arbitration). The "animating purpose" for the rule is to prevent double recovery by a plaintiff for the same indivisible tort, or wrong. *Id.* at 761.

Here, Plaintiff sued Defendant, Synchrony Bank, for its violations of the TCPA, and the RFDCPA in relation to its debt collection activities directed at Plaintiff. Plaintiff alleged that Synchrony Bank called him approximately fifty-one (51) times on his cellular phone after he revoked consent to be called. Doc. 1, ¶¶ 18-24. Plaintiff and Synchrony Bank settled their claims through arbitration and Plaintiff dismissed Synchrony Bank from this action. Doc. 42. In the same Complaint, Plaintiff sued Defendant Allied for its own violations of the TCPA, FDCPA, and RFDCPA by calling Plaintiff approximately three hundred and fifty-one (351) times after he revoked consent to be called.

On April 22, 2016 and May 12, 2016, after Plaintiff revoked his consent with Synchrony, it assigned Plaintiff's JCPenney x3032 and JCPenney x9002 accounts, respectively, to Defendant. SUFC at ¶ 35. Defendant received Plaintiff's cellular phone number from Synchrony to be called manually, and Defendant thereafter began the robo-calling campaign calling Plaintiff over 350 times in 45 days. SUFC at ¶¶ 9. Plaintiff never gave Defendant Allied consent to call him on his cellular phone. *Id.* at ¶13.

Allied acted independently from April 22, 2016 to June 6, 2016 when it called Plaintiff's cellular phone approximately three hundred and fifty-one (351) times

without consent.  *Id.* at ¶ 9.  These were not the same calls that Synchrony made previously as it appears Defendant attempts to improperly suggest. Defendant voluntarily entered into a collection contract with prior defendant Synchrony, where Defendant independently collected a debt in a way that violated the TCPA, FDCPA and RFDCPA. These were separate wrongs from those of former Defendant Synchrony, and they are separately compensable.  Simply put, Allied is liable for its own violations of the TCPA, FDCPA and RFDCPA.  Plaintiff's settlement addressed Synchrony's liability only and specifically excluded any claims asserted against Defendant Allied.

The settlement agreement that Defendant attempts to rely on couldn't be any clearer. Specifically, under "Release by Claimant", the agreement states: "Claimant agrees not to sue and forever releases and discharges Synchrony, any third party who sought collection on behalf of Synchrony **with the exception of Allied Interstate, LLC** ("Allied") . . .from any and all claims, demands, actions, causes of action, debts, accounts, accounting and any other action or claim. . ." Doc. 56-1, Ex. F (emphasis added). Under the same section the settlement agreement further states that "[t]he Parties acknowledge that this Agreement and Release are **not intended to include any claims that Plaintiff have against Allied Interstate, LLC**." *Id.* (emphasis added).  There is no reading of this release that could allow Defendant to escape liability and such an argument is frivolous.   Defendant has not provided any evidence to support its contention that Plaintiff has been fully compensated by Defendant's calls or that he has recovered doubly.

# V.    CONCLUSION

Plaintiff provided undisputed facts that Defendant (1) called Plaintiff on his cellular phone, (2) Defendant used an automatic telephone dialing system, (3) the Defendant called Plaintiff without consent because Plaintiff revoked consent on two separate occasions and (4) Defendant willfully and/or knowingly violated the TCPA by calling Plaintiff without consent and negligently disregarding Synchrony Bank's policy and do not call notations. Therefore, the Court should award Plaintiff statutory damages of $500 per violation of the TCPA. If the Court finds sufficient evidence of willfulness, then the Court should award Plaintiff treble damages of one-thousand five hundred dollars ($1,500.00) per violation of the TCPA for a total of $534,000 plus any fees and costs the Court should deem appropriate.  For the foregoing reasons, Plaintiff respectfully requests that this Court grant Plaintiff's Motion for Partial Summary Judgment on the claim of the TCPA.

Respectfully submitted this 7th day of October 2019,

PRICE LAW GROUP, APC

By: */s/ Alla  Gulchina*
Alla Gulchina, NJ #003732010
Admitted *pro hac vice*
alla@pricelawgroup.com
Brian J. Brazier, CA #245004
brian@pricelawgroup.com
L. Tegan Rodkey, CA #275830
tegan@pricelawgroup.com

*Attorneys for Plaintiff*
*Henry Mendoza*