UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | SACV 17-885 JVS (KESx) | Date | October 22, 2019 |
| Title | Henry Mendoza v. Allied Interstate LLC, et al. | | |

Present: The Honorable **James V. Selna, U.S. District Court Judge**

| Lisa Bredahl | Not Present |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| Not Present | Not Present |

**Proceedings:** **[IN CHAMBERS] <u>Order Regarding Cross-Motions for Summary Judgment</u>**

Defendant Allied Interstate, LLC ("Allied") filed a motion for summary judgment as to the three causes of action in Plaintiff Henry Mendoza's ("Mendoza's) Complaint. Mot., Dkt. No. 52. Mendoza ("Mendoza") opposed the motion. Opp'n, Dkt. No. 57. Allied replied. Reply, Dkt. No. 58.

Mendoza filed a motion for partial summary judgment on his Telephone Consumer Protection Act ("TCPA") cause of action. Dkt. No. 53. Allied opposed the motion. Dkt. No. 56. Mendoza replied. Reply, Dkt. No. 59.

For the foregoing reasons, the Court **GRANTS IN PART and DENIES IN PART** Allied's motion and **DENIES** Mendoza's motion.

### I. BACKGROUND

The following background is based on the undisputed facts set forth in Allied's statement of uncontroverted facts in support of its motion for summary judgment ("Allied SUF," Docket No. 52-1) and Mendoza's statement of uncontroverted facts in support of his motion for partial summary judgment ("Mendoza SUF," Docket No. 53-1).

Mendoza sued Allied in connection with two JC Penney/Synchrony credit card accounts, one ending in 9092 and one ending in 3032 (the "JC Penney Accounts"). Allied SUF ¶ 1. Mendoza alleges that Allied committed violations of the TCPA, Fair Debt Collection Practices Act, 15 U.S.C. § 1692, *et seq*. ("FDCPA"), and California's Rosenthal Fair Debt Collection Practices Act, Cal. Civ. Code § 1788, *et seq*.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | SACV 17-885 JVS (KESx) | Date | October 22, 2019 |
| Title | Henry Mendoza v. Allied Interstate LLC, et al. | | |

("RFDCPA") by calling his phone number ending in 5187. Id. ¶ 2.

Mendoza opened the 9092 JC Penney account in approximately February of 2011 and the 3032 account in approximately November of 2013. Id. ¶ 3. When Mendoza filled out the applications to open each account, he provided his cellular telephone number ending in 5187. Id. ¶ 4. Each of the JC Penney Accounts was governed by an account contract. Id. ¶ 5.

The account contract for the 3032 account contains a provision entitled to "CONSENT TO COMMUNICATIONS," which states, "You consent to us contacting you using all channels of communication and for all purposes. We will use the contact information you provide to us. You also consent to us and any other owner or servicer of your account contacting you using any communication channel. This may include text messages, automatic telephonic dialing systems and/or an artificial or prerecorded voice. This consent applies even if you are charged for the call under your phone plan. You are responsible for any charges that may be billed to you by your communications carriers when we contact you." Id. ¶ 7.

Mendoza does not remember if he read these particular agreements but stated his custom would be to glance through a credit card agreement when he received it. Id. ¶ 8.

With regard to the 9002 JC Penney Account, Mendoza received a letter from Synchrony Bank on or about June 14, 2016, that stated "According to our records, you opened your JC Penney credit account on 2/28/11. You did so by signing the application, whether written, verbally or electronically, and agreeing that you understood the terms and conditions of the account. You entered into a valid agreement with Synchrony Bank and JC Penney credit card upon signing the application, whether written, verbally, or electronically, and subsequently each time you authorized a transaction on your account." Id. ¶ 9.

Mendoza used both credit cards and eventually became delinquent on each card. Id. ¶ 10.

Allied engages in third-party collection work on behalf of clients by placing telephone calls to consumers. Id. ¶ 12. Allied never spoke to or communicated with Mendoza regarding getting consent or establishing a contract with Mendoza. Allied's

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 17-885 JVS (KESx) | Date | October 22, 2019 |
|---|---|---|---|
| Title | **Henry Mendoza v. Allied Interstate LLC, et al.** | | |

Response to Mendoza's SUF, Dkt. No. 58-1 ¶ 13.

On or around April 22, 2016, the 3032 JC Penney Account was placed with Allied for collection of a debt owed to Synchrony. Allied SUF ¶ 13. From April 22 through June 6, 2016, Allied made 224 collection calls in connection with the 3032 JC Penney Account to Mendoza's phone number ending in 5187 in an attempt to reach him. Id. ¶ 14.

On or around May, 2016, the 9092 JC Penney Account was placed with Allied for collection of a debt owed to Synchrony Bank from Mendoza. Id. ¶ 15. From May 12, 2016, through June 6, 2016, Allied made 127 collection calls in connection with the 9002 JC Penney account to Mendoza's phone number ending in 5187 in an attempt to reach him. Id. ¶ 16.

Mendoza did not answer any of the calls; Allied never spoke on the phone with Mendoza with regard to the JC Penney Accounts. Id. ¶ 19.

All calls from Allied to Mendoza to were placed between 8:00 a.m. and 8:30 p.m. Id. ¶ 23. There were only two calls that occurred after 8:00 p.m.: one on April 22 and one on May 12. Id. ¶ 24. Allied never dialed Mendoza more than 5 times in a single day with regard to each account. Id. ¶ 25. Allied never intentionally left any voicemails for Mendoza. Id. ¶ 26.

In 2016, Mendoza received collection calls from multiple other creditors (in addition to Allied) on the delinquent JC Penney accounts. Id. ¶¶ 34-35.

Mendoza's claims against Allied in the Complaint are based on allegations that Allied called him "almost every day" between April 22, 2016, and June 6, 2016. Id. ¶ 28.

Mendoza previously entered into a settlement with Synchrony Bank in which he was paid $22,016.62 from Synchrony and was given credits of $1,043.52 and $2,822.53 on the two JC Penney Accounts. Id. ¶ 30.

In connection with his claims for violations of the FDCPA and RFDCPA, Mendoza contends he suffered "loss of productivity at work" and emotional distress. Id.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.  SACV 17-885 JVS (KESx)   Date  October 22, 2019

Title  **Henry Mendoza v. Allied Interstate LLC, et al.**

¶ 39.  Mendoza has no documentary evidence to support loss of productivity at work, but he contends he was often not feeling well and had to reschedule things.  Id. ¶ 41.  Mendoza uses his personal cellular phone as his work phone and often uses his phone to speak to clients.  Allied's Response to Mendoza's SUF, Dkt. No. 58-1 ¶ 31.

## II. Legal Standard

Summary judgment is appropriate where the record, read in the light most favorable to the nonmovant, indicates "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). Summary adjudication, or partial summary judgment "upon all or any part of [a] claim," is appropriate where there is no genuine dispute as to any material fact regarding that portion of the claim.  Fed. R. Civ. P. 56(a); see also Lies v. Farrell Lines, Inc., 641 F.2d 765, 769 n.3 (9th Cir. 1981) ("Rule 56 authorizes a summary adjudication that will often fall short of a final determination, even of a single claim . . . .") (internal quotation marks omitted).

Material facts are those necessary to the proof or defense of a claim, and are determined by referring to substantive law.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  In deciding a motion for summary judgment, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor."  Anderson, 477 U.S. at 255.[1]

The moving party has the initial burden of establishing the absence of a material fact for trial.  Anderson, 477 U.S. at 256.  "If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact . . ., the court may . . . consider the fact undisputed."  Fed. R. Civ. P. 56(e)(2). Furthermore, "Rule 56[(a)][2]

---

[1] "In determining any motion for summary judgment or partial summary judgment, the Court may assume that the material facts as claimed and adequately supported by the moving party are admitted to exist without controversy except to the extent that such material facts are (a) included in the 'Statement of Genuine Disputes' and (b) controverted by declaration or other written evidence filed in opposition to the motion."  L.R. 56-3.

[2] Rule 56 was amended in 2010. Subdivision (a), as amended, "carries forward the summary-judgment standard expressed in former subdivision (c), changing only one word — genuine 'issue' becomes genuine 'dispute.'"  Fed. R. Civ. P. 56, Notes of Advisory Committee on 2010 amendments.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 17-885 JVS (KESx) | Date | October 22, 2019 |
|---|---|---|---|

| Title | **Henry Mendoza v. Allied Interstate LLC, et al.** | | |
|---|---|---|---|

mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp., 477 U.S. at 322. Therefore, if the nonmovant does not make a sufficient showing to establish the elements of its claims, the Court must grant the motion.

Where the parties have made cross-motions for summary judgment, the Court must consider each motion on its own merits. Fair Hous. Council of Riverside County, Inc. v. Riverside Two, 249 F.3d 1132, 1136 (9th Cir. 2001). The Court will consider each party's evidentiary showing, regardless of which motion the evidence was tendered under. See id. at 1137.

### III. DISCUSSION

**A.    Allied's Motion for Summary Judgment**

**1.    TCPA Claim**

"The three elements of a TCPA claim are: (1) the defendant called a cellular telephone number; (2) using an automatic telephone dialing system; (3) without the recipient's prior express consent." Meyer v. Portfolio Recovery Associates, LLC, 707 F.3d 1036, 1043 (9th Cir. 2012) (citing 47 U.S.C. § 227(b)(1)).

The TCPA "permits consumers to revoke their prior express consent to be contacted by telephone autodialing systems." Van Patten v. Vertical Fitness Grp., LLC, 847 F.3d 1037, 1048 (9th Cir. 2017). "Revocation of consent must be clearly made and express a desire not to be called or texted." Id. "Ninth Circuit courts, applying Van Patten, have held that prior express consent, even if obtained through a contract between the parties, does not preclude a party from revoking consent." Singer v. Las Vegas Athletic Clubs, 376 F. Supp.3d 1062, 1073 (D. Nev. 2019). Consent can be revoked orally. In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, 30 FCC Rcd. 7961, ¶ 64 (2015).

Mendoza voluntarily provided his phone number and consented to be called when he opened the JP Penney Accounts. Allied SUF ¶ 4. The key dispute between the parties is whether Mendoza subsequently revoked his consent to be called. Allied argues that

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | SACV 17-885 JVS (KESx) | Date | October 22, 2019 |
| Title | Henry Mendoza v. Allied Interstate LLC, et al. | | |

"the undisputed facts" demonstrate that Mendoza did not revoke his consent to be called. Id.

 Mendoza, for his part, argues that he twice effectively revoked his consent to be contacted. Opp'n at 12. Mendoza claims that "[o]n November 19, 2015, at 9:25 a.m., [he] answered a collection call from Synchrony Bank and unequivocally revoked consent to be called on his cell phone any further. After [he] revoked consent to be called, Synchrony Bank called [him] again that same day. [He] again answered and for a second time unequivocally revoked consent." Mendoza SUF, Docket No. 57-2 ¶ 6.[3] Accordingly, Mendoza argues, at the time Synchrony Bank transferred the JC Penney accounts to Allied, Synchrony lacked consent to call his phone number, and Allied never received consent to call Mendoza. Opp'n at 12.

 But, the recordings of telephone conversations Mendoza's counsel provided (see Rodkey Decl., Docket No. 57-4, Ex. D) involve conversations in which Mendoza spoke with Synchrony Bank representatives regarding his Walmart and PayPal accounts, *not* his JP Penney accounts. Mendoza has presented no facts to support his assertion that he revoked his consent to be called regarding the JC Penney accounts, in a telephone conversation, with a Synchrony representative.

 To this point, Allied notes that Mendoza admitted in discovery that he never spoke with any debt collector specifically regarding the JP Penney Accounts. Allied SUF ¶ 20. Allied asked Mendoza in an interrogatory to describe "each and every conversation [he] had with any debt collector regarding the two JC Penney accounts," and Mendoza did not identify a single communication. Id. Mendoza notes in his Statement of Genuine Issues that in this interrogatory, "Mendoza responds that calls made by Allied from 8:00 am through 7:00 pm were during Mendoza's work hours and calls made after 7:00 pm were received at home during family time." Docket No. 57-1, ¶ 20. This answer does not

---

[3] This "uncontroverted fact" relies on Mendoza's Declaration. Docket No. 57-6 ¶ 2. Allied objects to Mendoza's reliance on this Declaration, arguing that it is "a sham declaration," that "purports to state the exact date and time of calls with Synchrony Bank," which "contradict[s] multiple portions of his deposition testimony and written discovery responses in which he states . . . he does not remember any of the time and dates of phone calls with Synchrony Bank." Evidentiary Objections, Docket No. 58-2 at 1. In Mendoza's earlier deposition, he testified that he asked Synchrony to stop calling him, but did not provide dates or times when he allegedly did so. Mendoza Depo., Rodkey Decl., Ex. A, Docket No. 57-3 at 154:18-20, 155:4.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 17-885 JVS (KESx) | Date | October 22, 2019 |
|---|---|---|---|

| Title | **Henry Mendoza v. Allied Interstate LLC, et al.** |
|---|---|

create a dispute of fact; it does not respond to the question posed by the interrogatory.

Allied also argues that it is undisputed that "Allied was never aware of any revocation of consent to call on the JC Penney Accounts," and Mendoza "has no evidence to support that Allied was aware of a revocation." Mot. at 7. To this, Mendoza argues that Allied "had no permission to call" him, because Synchrony "could not transfer consent" to Allied. Opp'n at 15. Mendoza points to evidence he submitted that, pursuant to Synchrony's "Cell Phone Scrub Policy," his cell phone number was marked with notations on Synchrony's account notes, indicating that he had revoked consent and that his number should be dialed manually, pursuant to Synchrony policy. Id. at 16-17.[4] Mendoza argues that because Allied produced these notes during discovery, Allied was in possession of these documents and could have known that Mendoza had revoked his consent to be called. Id. at 17.[5]

Regardless of what these notes do or do not establish, the evidence Mendoza relies upon to argue that he revoked his consent are phone conversations with Synchrony. See Mendoza SGI, Docket No. 57-2 ¶ 6. Mendoza argues that he "revoked prior express consent to be called with Synchrony." Opp'n at 15. But, as the Court noted above, these conversations concerned Mendoza's Walmart and PayPal accounts, not his JC Penney accounts, and do not create a fact dispute about whether he revoked consent. See Rodkey Decl., Docket No. 57-4, Ex. D. These conversations were not effective to revoke consent to be called on the JC Penney accounts: "the scope of a consumer's consent depends on the transactional context in which it is given. The call or text message must

---

[4] Allied objects that this evidence (found in Exhibit A to the Gulchina Declaration, Docket No. 57-5, and Exhibit F to the Rodkey Declaration, Docket No. 57-4) is inadmissible because these documents are unauthenticated, irrelevant, and hearsay. Docket No. 58-1 ¶¶ 23-26. Because the Court does not rely on this evidence in ruling on the instant motion, the Court declines to consider Allied's objections.

[5] In its Reply, Allied argues that Mendoza's TCPA claim is barred because debt collectors are "entitled to rely in good faith upon information provided by a creditor with regard to collection activities," and "[t]here is no duty imposed on a debt collector to independently investigate an account that it receives from a creditor." Clark v. Capital Credit Cr Collection Services, 460 F.3d 1162, 1174 (9th Cir. 2005) (Reply at 10). Allied did not make this argument in its Motion. The Court need not consider issues raised for the first time in a reply brief. Lentini v. Cal. Ctr. for the Arts, 370 F.3d 837, 843 n.6 (9th Cir. 2004); Cedano-Viera v. Ashcroft, 324 F.3d 1062, 1066 n.5 (9th Cir. 2003).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 17-885 JVS (KESx) | Date | October 22, 2019 |
|---|---|---|---|
| Title | Henry Mendoza v. Allied Interstate LLC, et al. | | |

be based on the circumstance in which the consumer gave his or her number." Van Patten v. Vertical Fitness Grp., LLC, 847 F.3d 1037, 1040 (9th Cir. 2017).

The reasoning in Jara v. GC Services Limited Partnership, 2018 WL 2276635, at *3-4 (C.D. Cal. May 17, 2018), supports this conclusion. In that case, the Court found that there was a genuine dispute of material fact as to whether the plaintiff had revoked consent to be called. The plaintiff claimed that she had revoked consent for all her accounts, while the defendant argued that each time she revoked consent for a specific account, it stopped calling her about that account. Id. Unlike in this case, the plaintiff used specific language to revoke her consent, and mentioned all of her accounts, asking that she wanted the defendant to stop calling "about my debts" and "about my accounts." Id. at *4. Based on this communication, the court reasoned that consent is "terminated when the person [who obtained consent] knows or has reason to know that the other is no longer willing for him to continue the particular conduct," and "[a] reasonable jury could construe [the plaintiff's] directive to stop calling her about her 'accounts,' and 'debts' on several occasions as her revoking her consent with respect to all of her outstanding accounts." Id.

Similarly, in Hudson v. Sharp Healthcare, 2014 WL 2892290, at *7-8 (S.D. Cal. June 25, 2014) the Court analyzed the plaintiff's alleged revocation of consent as to two separate accounts for which consent had previously been granted.

The Court finds that there is no genuine dispute of material fact as to whether Mendoza revoked his consent to be called in a telephone conversation with Synchrony Bank; Mendoza has not offered evidence sufficient to support his allegation that he did revoke his consent as to his JC Penney accounts. As consent is one of the elements of Mendoza's TCPA claim, the Court GRANTS Allied's motion for summary judgment on this cause of action.

     **2.**     **FDCPA Claim**

Under the FDCPA, "[a] debt collector may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt." 15 U.S.C. § 1692(d). Conduct such as "[c]ausing a telephone to

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | SACV 17-885 JVS (KESx) | Date | October 22, 2019 |
| Title | Henry Mendoza v. Allied Interstate LLC, et al. | | |

ring or engaging in telephone conversation repeatedly or continuously *with intent* to annoy, abuse, or harass any person" is a violation of this section. Id. § 1692(d)(5) (emphasis added).

Here, the parties do not dispute that Allied made 351 collection calls in connection with the JP Penney accounts from April 22, 2016 through June 6, 2016. Allied SUF ¶¶ 13, 16. Mendoza did not answer any of the calls. Id. ¶ 19. All calls were placed between 8:00 a.m. and 8:30 p.m. Id. ¶ 23. Only two calls occurred after 8:00 p.m. Id. ¶ 24. Allied never dialed Mendoza more than five times in a single day with regard to each account and never intentionally left any voice mail messages. Id. ¶¶ 25-26.

Allied argues that "evidence of the sheer number of calls, standing alone, will not meet [Mendoza's] burden of establishing a violation" of this section. Mot. at 10. For this proposition, Allied cites Arteaga v. Asset Acceptance, LLC, 733 F. Supp.2d 1218, 1227 (E.D. Cal. 2010), which states:

> Whether there is actionable harassment or annoyance turns not only on the volume of calls made, but also on the pattern of calls. Court opinions differ, however, as to the amount or pattern of calls sufficient to raise a triable issue of fact regarding the intent to annoy, harass, or oppress. Although there is no bright-line rule, certain conduct generally is found to either constitute harassment, or raise an issue of fact as to whether the conduct constitutes harassment, while other conduct fails to establish harassment as a matter of law.

(Internal quotation marks and citations omitted).

Allied argues Mendoza "can offer no evidence in support of his section 1692(d)(5) claim other than the fact that Allied attempted to reach him many times," and no evidence "Allied disobeyed an instruction to stop calling or that it called back immediately after hanging up, factors from which a court could infer the necessary intent to harass, annoy or abuse." Mot. at 13. Therefore, Allied argues, "no reasonable trier of fact could conclude that Allied intended to harass [Mendoza]," and "the only purpose of the calls was to reach [Mendoza]" to attempt to collect the debts he owed to Synchrony." Id.

Construing the evidence in Mendoza's favor, the 351 calls Allied made in less than six weeks, and the corresponding daily average for calls, provides an adequate basis for a

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.  SACV 17-885 JVS (KESx)                                Date  October 22, 2019

Title     **Henry Mendoza v. Allied Interstate LLC, et al.**

fact finder to find a violation of the FDCPA. "This is especially so since FDCPA and Rosenthal Act claims must be evaluated under a least sophisticated consumer standard." Joseph v. J.J. Mac Intyre Companies, LLC, 281 F. Supp. 2d 1156, 1165 (N.D. Cal. 2003) (holding that the issue of whether approximately 75 calls constituted harassment could not be decided as a matter of law).

Therefore, the Court DENIES Allied's motion for summary judgment on Mendoza's FDCPA cause of action.

### 3. RFDCPA Claim

The same genuine disputes of fact regarding Mendoza's FDCPA claim also apply to Allied's alleged violation of the Rosenthal Act because the Rosenthal Act incorporates the relevant FDCPA provisions. See Cal. Civ. Code § 1788.17 ("[E]very debt collector collecting or attempting to collect a consumer debt shall comply with the provisions of [15 U.S.C. §§ 1692b-j], inclusive of, and shall be subject to the remedies in [15 U.S.C. § 1692k].").

Accordingly, the Court DENIES Allied's motion for summary judgment on the RFDCPA claim.

### 4. The One-Satisfaction Rule

"In order for a court to find complete satisfaction under the one satisfaction rule, there must be such an identity between the injuries alleged and the remedies available that any additional recovery would unjustly enrich the plaintiff." Uthe Tech. Corp. v. Metrium, 808 F.3d 755, 760-61 (9th Cir. 2015)

Allied argues that summary judgment should be granted on all of Mendoza's claims based on the one-satisfaction doctrine. Mot. at 14-16. It is undisputed that Mendoza entered into a settlement with Synchrony Bank, where the latter paid him $22,016.62, in addition to credits of $1,043.52 and $2,822.53 on the two JC Penney Accounts. Allied SUF ¶ 30.

Allied argues that Mendoza's claims, remedies, and alleged injuries he asserts against it "are the same as what he asserted and recovered" against Synchrony. Mot. at

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | SACV 17-885 JVS (KESx) | Date | October 22, 2019 |
| Title | Henry Mendoza v. Allied Interstate LLC, et al. | | |

15. Specifically, Allied argues that Mendoza's "claims against Synchrony, which he settled, encompassed the same calls for which he now seeks a double-recovery from Allied." Id. The Recitals section of the agreement with Synchrony states that the "Parties intend to fully and completely settle all claims . . . that were or could have been brought by [Mendoza] in the Litigation[]." Grammatico Decl., Ex. B, Docket No. 52-2.

Mendoza argues that the one-satisfaction rule does not apply, noting that it "derives from the common law as to joint tortfeasors and a single indivisible wrong." Opp'n at 24; see Uthe at 761. Mendoza contends that Allied "independently collected a debt in a way that violated the TCPA, FDCPA and RFDCPA," and that "[t]hese were separate wrongs from those of former defendant Synchrony, and they are separately compensable." Opp'n at 26. Further, Mendoza argues that his settlement with Synchrony concerned 51 calls, some of which were made by the latter before Mendoza's accounts were transferred to Allied. Id. at 27; see also Mendoza's Statement of Genuine Issues, Docket No. 57-1 ¶ 27.

In addition, Mendoza disputes that the language of the Settlement Agreement precludes his claims against Allied, noting that the Release section states that Mendoza "agrees not to sue and forever releases and discharges Synchrony, any third party who sought collection on behalf of Synchrony with the exception of Allied Interstate, LLC ("Allied"). Id. at 26. The agreement later states, "[t]he parties acknowledge that this Agreement and Release are not intended to include any claims that [Mendoza] may have against Allied Interstate, LLC." Id.

To this, Allied states that although "[i]t is true that the settlement agreement purports to carve Allied out of the release . . . the critical point here is not what [Mendoza's] intention was with regard to Allied in the scope of the release; rather, it is that Synchrony was equally responsible for all of the calls made by Allied, the liability regarding the pool of calls made by Allied is indistinguishable, and [Mendoza] already obtained satisfaction from Synchrony." Mot. at 16.

The Court disagrees with Allied that the one-satisfaction rule applies to Mendoza's claims and mandates summary judgment on Mendoza's causes of action. The Court cannot conclude that Allied's alleged wrongs are, as a matter of law, the same as Synchrony's alleged wrongs.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | SACV 17-885 JVS (KESx) | Date | October 22, 2019 |
| Title | Henry Mendoza v. Allied Interstate LLC, et al. | | |

### 5. Actual Damages

Allied argues that if the Court denies summary judgment on Mendoza's FDCPA and RFDCPA causes of action, it should at least grant partial summary judgment with regard to Mendoza's request for actual damages. Mot. at 16.

"The FDCPA and Rosenthal Act allow for recovery of actual damages sustained as a result of the debt collector's violation." Cunningham v. Meridian Credit Group, LLC, 2019 WL 643966, at *7 (C.D. Cal. Feb. 11, 2019) (citing 15 U.S.C. § 1692K(a)(l) and Cal. Civ. Code § 1788.40(a)).

"Courts in the Ninth Circuit have ruled that emotional distress damages are recoverable under the FDCPA." Smart v. Emerald City Recovery, LLC, 2019 WL 366205, at *2 (W.D. Wash. Jan. 20, 2019).

In connection with his claims for violations of the FDCPA and RFDCPA, Mendoza contends he suffered "loss of productivity at work" and emotional distress. Allied SUF ¶ 39. Mendoza did not dispute that he "has no documentary evidence to support loss of productivity at work," but contends "he was often not feeling well and had to reschedule things." Id. ¶ 41. Allied argues that "if [Mendoza] cannot actually document that he was less productive at work because Allied was calling him, then he cannot prove that he was, in fact less productive, at work." Mot. at 17.

Similarly, Allied argues that Mendoza only offers "conclusory" statements regarding the emotional distress he allegedly experienced. Id. at 17-18. Allied argues Mendoza "never received any medical treatment for any of the alleged stress that caused him to miss sleep," and that "[s]imply stating that he missed sleep is not sufficient to establish any actual injury." Id. at 17.

Further, Allied argues Mendoza "cannot establish causation based on Allied's conduct." Mot. at 18. Allied notes it is "undisputed that in 2016 Mendoza was delinquent on at least four other credit cards," in addition to the two JC Penney accounts, and was being called by numerous other creditors on all of those accounts. Allied SUF ¶¶ 33, 36-38. Thus, Allied argues, it is "not possible to prove that it was the calls by Allied," specifically, "that caused him the alleged loss of productivity at work or the sleepless nights." Mot. at 18.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 17-885 JVS (KESx) | Date | October 22, 2019 |
|---|---|---|---|
| Title | Henry Mendoza v. Allied Interstate LLC, et al. | | |

Mendoza argues that his emotional distress was more extensive. In his Statement of Genuine Issues, he states that Allied's calls caused him "to experience migraines, sleeplessness and generalized persistent anxiety" and that he "used various medications to help treat symptoms that were worsened as a result of the stress caused by Allied's calls including high blood pressure, headaches and complications related to diabetes." Mendoza SGI, Docket No. 57-1 ¶¶ 40, 42.[6]

In addition, Mendoza argues that Allied "seeks to impose imaginary requirements on [his] claim for actual damages," and that he "is not required to submit documentation beyond his own testimony of emotional distress." Opp'n at 28.

The Court finds that there are genuine disputes of fact as to the alleged damages Mendoza suffered that preclude granting partial summary judgment. Mendoza's statements that he suffered from a lack of sleep and stress and was unable to answer calls from prospective clients are more than conclusory and enough to establish emotional distress.

**B.     Mendoza's Motion for Partial Summary Judgment**

**1.     TCPA Claim**

To prevail on his TCPA claim, Mendoza must show that 1) Allied called his cellular phone, 2) using an automatic telephone dialing system ("ATDS"), 3) without his consent. Meyer, 707 F.3d at 1043.

"[T]he term automatic telephone dialing system means equipment which has the capacity – (1) to store numbers to be called or (2) to produce numbers to be called, using a random or sequential number generator – and to dial such numbers." Marks v. Crunch San Diego, LLC, 904 F.3d, 1041, 1052 (9th Cir. 2018). Predictive dialers fall within the definition of an ATDS. Meyer, 707 F.3d at 1043.

---

[6] Allied argues that Mendoza's claim that he received medical treatment for high blood pressure and headaches contradicts his statement in his interrogatory responses that he had not received any medical treatment. See Evidentiary Objections, Docket No. 58-2, No. 3. Because the Court does not rely on Mendoza's allegations regarding medical treatment, the Court declines to rule on Allied's evidentiary objections to this evidence.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | SACV 17-885 JVS (KESx) | Date | October 22, 2019 |
| Title | Henry Mendoza v. Allied Interstate LLC, et al. | | |

For the first and second elements of his TCPA claim, Mendoza argues that Allied "uses aQrate to make outgoing calls to consumer," which has previously been held to be an ATDS "given its functionality." Mot. at 14. The aQrate system, Mendoza argues, runs continuously and has the capacity to make as many as 50,000 calls a day. Id. at 14-15. Mendoza describes various other alleged features of the aQrate system, including that the agent has no control over call recipients, that calls are randomly assigned from a call list, and that the system dials all telephone numbers. Id., see Mendoza SUF, Docket No. 53-1 ¶¶ 14-20. Allied, for its part, argues that Mendoza has failed to establish that Allied made the calls at issue with an ATDS. Opp'n at 12-13.

For the third element of his TCPA claim, Mendoza argues that he "effectively revoked his consent to be called," but that Allied "continued its bombardment of calls to [Mendoza's] cell phone using an ATDS." Mot. at 16.

Regardless of whether there is a genuine dispute of material fact regarding Allied's use of an ATDS, the problem with Mendoza's motion is that he has not established that he revoked his consent to be called concerning the JC Penney accounts. Mendoza claims that he "clearly and unequivocally stated that he did not want to be called again," on November 19, 2015 in "two separate conversations" with Synchrony. Mot. at 18. But, these conversations were in regards to Mendoza's Walmart and PayPal accounts, not his JP Penney accounts. See Docket No. 53-5, Ex. D. Mendoza claims that "[a]t the time of the November 19, 2015 calls, Synchrony was collecting on Plaintiff's Walmart, PayPal, JC Penney x3032, and JC Penney x9002 accounts," but the underlying document Mendoza cites does not establish this. Reply at 11; Mendoza SUF ¶ 5.

Mendoza has not proffered evidence sufficient to show he unquestionably revoked his consent to be called by Synchrony regarding his JP Penney account. Indeed, in a response to an interrogatory, Mendoza did not identify any communication he had with any debt collector regarding the JC Penney accounts. Grammatico Decl., Docket No. 56-1, Ex. C, No. 3.

Accordingly, Mendoza cannot establish all three elements of his TCPA claim, and is not entitled to summary judgment.

### IV. CONCLUSION

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | SACV 17-885 JVS (KESx) | Date | October 22, 2019 |
| Title | Henry Mendoza v. Allied Interstate LLC, et al. | | |

For the foregoing reasons, the Court **GRANTS IN PART and DENIES IN PART** Allied's motion for summary judgment and **DENIES** Mendoza's motion for partial summary judgment.

**IT IS SO ORDERED.**

| | : | 0 |
|---|---|---|
| Initials of Preparer | lmb | |